[801 NE2d 404, 769 NYS2d 184]

Christine A. Jeffreys, Appellant, v Patrick H. Griffin, Respondent.

Argued September 18, 2003; decided October 30, 2003

## POINTS OF COUNSEL

*Barry S. Gedan,* Riverdale, for appellant. I. The Bronx County Supreme Court and the Appellate Division majority misapprehended the import of the Court of Appeals' decision in *David v Biondo* (92 NY2d 318 [1998]). (*DeWitt v Hall,* 19 NY2d 141; *Schwartz v Public Adm'r of County of Bronx,* 24 NY2d 65; *Finkelstein v Cornell Univ. Med. Coll.,* 269 AD2d 114; *Johnson v Oval Pharm.,* 165 AD2d 587; *Reed v State of New York,* 78 NY2d 1.) II. Factual findings of administrative agencies, made after quasi-judicial hearings, are routinely accorded collateral estoppel effect. (*Ryan v New York Tel. Co.,* 62 NY2d 494; *Sheppard v Blitman/Atlas Bldg. Corp.,* 288 AD2d 33; *Dailey v Tofel, Berelson, Saxl & Partners,* 273 AD2d 341; *Matter of Metro-North Commuter R.R. Co. v New York State Exec. Dept. Div. of Human Rights,* 271 AD2d 256; *Lee v Jones,* 230 AD2d 435, 91 NY2d 802; *Rosa v Quarry Crotona Homes,* 239 AD2d 273; *Vogel v Herk El. Co.,* 229 AD2d 331; *Wehringer v Brannigan,* 232 AD2d 206, 89 NY2d 980, 1087; *Matter of Camperlengo v Barell,* 78 NY2d 674; *Matter of Choi v State of New York,* 74 NY2d 933.) III. Former Doctor Griffin had a full and fair opportunity to contest the quasi-judicial hearing before the Board for Professional Medical Conduct Hearing Committee, which found squarely against him upon the identical issue raised in the summary judgment motion. (*Lee v Jones,* 230 AD2d 435; *Bastein v Sotto,* 299 AD2d 432; *Messina v Matarasso,* 284 AD2d 32; *Tower Ins. Co. of N.Y. v Old N. Blvd. Rest. Corp.,* 245 AD2d 241; *Rice v Massalone,* 160 AD2d 861; *A to Z Assoc. v Cooper,* 161 Misc 2d 283, 215 AD2d 161.) IV. Under the current state of the law, *Stevenson v Goomar* (148 AD2d 217 [1989]) has lost its precedential value. (*Staatsburg Water Co. v Staatsburg Fire Dist.,* 72

NY2d 147; *Gilberg v Barbieri,* 53 NY2d 285; *Rosa v Quarry Crotona Homes,* 239 AD2d 273; *Vogel v Herk El. Co.,* 229 AD2d 331; *Wehringer v Brannigan,* 232 AD2d 206; *A to Z Assoc. v Cooper,* 161 Misc 2d 283, 215 AD2d 161; *Parklane Hosiery Co. v Shore,* 439 US 322; *Clemens v Apple,* 65 NY2d 746; *Parker v Blauvelt Volunteer Fire Co.,* 93 NY2d 343; *Sanchez v Orozco,* 178 AD2d 391.) V. The holding of the Appellate Division majority, if broadly read, represents a substantial change in the law governing application of collateral estoppel to administrative adjudications, and, if simply representing a narrowly carved exemption, intrudes upon the legislative function. (*Horn v New York Times,* 100 NY2d 85; *Wieder v Skala,* 80 NY2d 628.) VI. It is constitutionally impermissible to insulate physicians from collateral estoppel, or to bar that doctrine's use by victims of physicians' sexual assaults. (*Stevenson v Goomar,* 148 AD2d 217; *Bush v Gore,* 531 US 98; *Hulin v Fibreboard Corp.,* 178 F3d 316; *Le Grand v Evan,* 702 F2d 415; *Matter of Benjamin L.,* 92 NY2d 660; *People v Koertge,* 182 Misc 2d 183; *Schwartz v Durning,* 104 Misc 2d 1018; *Judo, Inc. v Peet,* 68 Misc 2d 281; *Clark v Jeter,* 486 US 456; *Adsani v Miller,* 139 F3d 67, 525 US 875.) VII. The Board for Professional Medical Conduct adjudication, supported by findings independent of the reversed criminal conviction, cannot be collaterally attacked on this appeal. (*Cahill v Harter,* 277 AD2d 655; *Allied Chem. v Niagara Mohawk Power Corp.,* 129 AD2d 233, 72 NY2d 271, 488 US 1005; *Gild v Fried,* 298 AD2d 275; *Matter of Joseph v Roldan,* 289 AD2d 243; *Stone v Goldberg,* 215 AD2d 180; *Stevenson v Goomar,* 148 AD2d 217; *Ta-Chotani v Doubleclick, Inc.,* 276 AD2d 313.)

*Michael C. Marcus,* New York City, for respondent. I. This appeal should be dismissed since matters of fact and the exercise of discretion were inextricably woven into the determination appealed from. (*Staatsburg Water Co. v Staatsburg Fire Dist.,* 72 NY2d 147; *Patrician Plastic Corp. v Bernadel Realty Corp.,* 25 NY2d 599; *Rosemont Enters. v Irving,* 41 NY2d 829.) II. The offensive use of collateral estoppel to establish civil tort liability under the particular circumstances of this case contravenes the concept of fairness underlying the collateral estoppel doctrine. (*Ryan v New York Tel. Co.,* 62 NY2d 494; *Sheppard v Blitman/Atlas Bldg. Corp.,* 288 AD2d 33; *A to Z Assoc. v Cooper,* 161 Misc 2d 283, 215 AD2d 161; *David v Biondo,* 92 NY2d 318; *Stevenson v Goomar,* 148 AD2d 217; *D'Arata v New York Cent. Mut. Fire Ins. Co.,* 76 NY2d 659; *Gramatan Home Invs. Corp. v Lopez,* 46 NY2d 481; *Staatsburg Water Co. v Staatsburg Fire Dist.,* 72 NY2d 147; *Schwartz v Public Adm'r of County of Bronx,*

24 NY2d 65.) III. The equitable principles addressed by the Court of Appeals in *David v Biondo* (92 NY2d 318 [1998]) are not limited to the privity analysis therein. IV. The First Department's majority opinion does not intrude on a legislative function. (*Horn v New York Times,* 100 NY2d 85; *Wieder v Skala,* 80 NY2d 628.) V. There are no viable constitutional issues. VI. The inference that the Board for Professional Medical Conduct's factual finding was influenced by the criminal conviction was correctly considered by the Appellate Division. (*Chateau D'If Corp. v City of New York,* 219 AD2d 205, 88 NY2d 811; *Caldwell v 302 Convent Ave. Hous. Dev. Fund Corp.,* 272 AD2d 112.)

*Donald R. Moy,* Lake Success, for Medical Society of the State of New York, amicus curiae. The application of collateral estoppel against defendant-respondent would not comport with fundamental fairness. (*Staatsburg Water Co. v Staatsburg Fire Dist.,* 72 NY2d 147; *Gilberg v Barbieri,* 53 NY2d 285; *Stevenson v Goomar,* 148 AD2d 217, 74 NY2d 945; *David v Biondo,* 92 NY2d 318.)

**OPINION OF THE COURT**

READ, J.

This appeal calls upon us to decide whether a finding of sexual misconduct by a Hearing Committee of the New York State Department of Health's Board for Professional Medical Conduct precludes defendant physician from contesting liability for assault and battery in plaintiff patient's civil action to recover money damages. In light of the circumstances of this case and the flexible nature of the doctrine of collateral estoppel, we conclude that it does not.

I.

In December 1991, plaintiff Christine A. Jeffreys began treatment with defendant Dr. Patrick H. Griffin, a gastroenterologist, for stomach problems and depression, for which defendant prescribed antidepressants. Plaintiff had been evicted from her apartment in July 1991, and she blamed her ailments on stress caused by her landlord's supposedly oppressive conduct.

On January 13, 1995, plaintiff underwent a colonoscopy and an upper endoscopy, both of which require sedation, at defendant's office. She subsequently reported to the police that defendant had orally sodomized her at some point during the upper endoscopy. Law enforcement authorities supplied plaintiff with a tape recorder, which she secretly wore when she visited

defendant's office on April 27, 1995, ostensibly for medical follow-up. The tape recording captured defendant repeatedly denying the sodomy, but stating that he had kissed plaintiff immediately before or after performing the upper endoscopy.[1] Defendant later prepared an exculpatory chart entry documenting plaintiff's April 27th office visit.

Civil, criminal and administrative proceedings, all stemming from plaintiff's allegations of oral sodomy, quickly ensued. First, in October 1995, plaintiff commenced this civil action against defendant, alleging assault and battery and intentional infliction of emotional distress. Then on January 19, 1996, defendant was indicted on charges of first-degree sodomy, sexual abuse in the first degree and falsifying business records in the first degree. Finally, in March 1996, the New York State Department of Health's Board for Professional Medical Conduct brought disciplinary charges against defendant. Administrative hearings were held before a Hearing Committee of the Board on April 24, May 2 and 29, June 10, 13 and 27 and July 17 and 18, 1996.

Defendant's criminal trial also took place in the spring of 1996, and, on June 18, 1996, he was convicted by a jury of the crimes of first-degree sodomy and falsifying business records in the first degree. On September 6, 1996, defendant was sentenced to 3$^1$/$_3$ to 10 years in prison. On October 24, 1996, with knowledge of defendant's recent criminal conviction and sentencing, the Hearing Committee issued its determination and order revoking defendant's license to practice medicine. Two of the three Committee members found, by a preponderance of the evidence (see Public Health Law § 230 [10] [f]), that defendant had performed oral sex on plaintiff without her consent, and therefore had engaged in professional misconduct. All three resolved that defendant had engaged in professional misconduct by entering a false business record relating to plaintiff's office visit on April 27, 1995.

In April 1997, Supreme Court granted plaintiff's motion for summary judgment on liability in her cause of action for assault and battery, based solely on defendant's criminal conviction. After the Appellate Division, with two Justices dissenting, reversed his criminal conviction in April 1998 (242 AD2d 70 [1st Dept 1998], appeal dismissed 93 NY2d 955 [1999]), defendant

---

1. According to his attorney, defendant later denied kissing plaintiff, testifying that he had made this story up in his panic to persuade her that, because of the effects of the drugs administered during the colonoscopy and upper endoscopy, her memory was seriously faulty.

moved to vacate this order. In December 1998, Supreme Court granted defendant's motion and vacated its prior order. Relying on our decision in *David v Biondo* (92 NY2d 318 [1998]), Supreme Court held that the Committee's adverse factual determination did not preclude defendant from contesting his liability for assault and battery in plaintiff's civil action.

Defendant was subsequently retried and, in April 2000, a jury acquitted him of all charges. Then in October 2002, the Appellate Division, with one Justice dissenting, affirmed Supreme Court's order in plaintiff's civil action (301 AD2d 232 [1st Dept 2002]). In explaining its decision, the majority adverted to "[t]he crucial point . . . that notwithstanding the charges made and evidence proffered on retrial, defendant was acquitted of all criminal charges" (*id.* at 233). The Appellate Division subsequently certified the following question to us: "Was the order of [the Appellate Division], which affirmed the order of the Supreme Court, properly made?"

## II.

Collateral estoppel, or issue preclusion, gives conclusive effect to an administrative agency's quasi-judicial determination when two basic conditions are met: (1) the issue sought to be precluded is identical to a material issue necessarily decided by the administrative agency in a prior proceeding; and (2) there was a full and fair opportunity to contest this issue in the administrative tribunal (*see Ryan v New York Tel. Co.*, 62 NY2d 494 [1984]; *see also Schwartz v Public Adm'r of County of Bronx*, 24 NY2d 65 [1969]). The proponent of collateral estoppel must show identity of the issue, while the opponent must demonstrate the absence of a full and fair opportunity to litigate. In three decisions handed down on the same day in 1988, we explored the boundaries of these basic conditions in three different kinds of administrative proceedings.

First, in *Staatsburg Water Co. v Staatsburg Fire Dist.* (72 NY2d 147 [1988]), plaintiff water company sought to use a determination by the Public Service Commission (PSC) to preclude the defendant from litigating its liability in the plaintiff's suit seeking back payment for services rendered. At the plaintiff's request, the PSC issued a decision which found, in essence, that plaintiff water company was entitled to payment from the defendant. We found collateral estoppel inapplicable because plaintiff water company initiated the PSC decision, the defendant was not a party to the proceeding and the PSC had no power to compel the defendant to take any action as a result of

its determination. In light of this absence of immediate consequences for the defendant, we concluded that the PSC's decision was an advisory opinion, which the defendant lacked a full and fair opportunity to contest.

Importantly, we also noted in *Staatsburg* that collateral estoppel is a flexible doctrine, such that

> "[i]n the end, the fundamental inquiry is whether relitigation should be permitted in a particular case in light of what are often competing policy considerations, including fairness to the parties, conservation of the resources of the court and the litigants, and the societal interests in consistent and accurate results" (*id.* at 153 [citations omitted]).

Second, in *Allied Chem. v Niagara Mohawk Power Corp.* (72 NY2d 271 [1988]), we concluded that the party against whom collateral estoppel was sought had indeed enjoyed a full and fair opportunity to contest the issue before the PSC. There, Niagara Mohawk had filed a petition with the PSC and Allied Chemical had filed a counterpetition and complaint. The PSC ruled in Niagara Mohawk's favor, and Allied Chemical chose to file the action in Supreme Court rather than contest the PSC's determination in a CPLR article 78 proceeding. When Niagara Mohawk moved to dismiss the action based on the PSC's prior determination and the PSC, added as a party at the trial court's behest, moved for summary judgment on the same grounds, Supreme Court granted the motions.

We affirmed, holding that collateral estoppel properly barred Allied Chemical's action. In so doing, we again stressed the need to assess whether issue preclusion is fair in view of the realities in the particular administrative setting:

> "While issue preclusion may arise from the determinations of administrative agencies, in that context the doctrine is applied more flexibly, and additional factors must be considered by the court. These additional requirements are often summed up in the beguilingly simple prerequisite that the administrative decision be 'quasi-judicial' in character" (*id.* at 276 [citations omitted]).

We noted that among the factors bearing on whether an administrative decision is "quasi-judicial" are "whether the procedures used in the administrative proceeding . . . were sufficient both quantitatively and qualitatively, so as to permit

confidence that the facts asserted were adequately tested, and that the issue was fully aired" (*id.* at 276-277).

Third, *Matter of Halyalkar v Board of Regents of State of N.Y.* (72 NY2d 261 [1988]) called upon us to decide whether the State Board of Regents, which prior to 1991 shared responsibility for physician discipline with the Department of Health, might find a physician guilty of willfully and knowingly filing false medical reports solely on the basis of a consent order negotiated by the physician with the New Jersey Board of Medical Examiners. We recognized that in light of the consent order, the issues were never litigated in New Jersey, and without litigation there could be no identity of issues. Further, whether to apply collateral estoppel in a particular case depends upon "general notions of fairness involving a practical inquiry into the realities of the litigation" (*id.* at 268; *see also Gilberg v Barbieri*, 53 NY2d 285, 291-292 [1981]; *People v Roselle*, 84 NY2d 350, 357 [1994] ["(C)ollateral estoppel, a flexible doctrine, should not be mechanically applied just because some of its formal prerequisites, like identity of parties, identity of issues, a final and valid prior judgment and a full and fair opportunity to litigate the prior determination, may be present"]).

## III.

Applying the foregoing principles and precedents to these facts, we look first at whether plaintiff established the identity of a material issue necessarily decided by the administrative tribunal, and conclude that she did. She limited the relevant cause of action to assault and battery and did not, for example, also include a malpractice claim. The Hearing Committee specifically found that plaintiff awakened at some point after defendant had commenced the upper endoscopy and discovered him "administering oral sex" to her without her consent; therefore, identity of issue exists.[2]

Next, the Board for Professional Medical Conduct's disciplinary hearings are among the most procedurally rigorous adminis-

---

2. The Pattern Jury Instructions provide that "[a] person who intentionally touches another person, without that person's consent, and causes an offensive bodily contact commits a battery and is liable for all damages resulting from (his, her) act. Intent involves the state of mind with which an act is done. The intent required for battery is intent to cause a bodily contact that a reasonable person would find offensive. An offensive bodily contact is one that is done for the purpose of harming another or one that offends a reasonable sense of personal dignity, or one that is otherwise wrongful" (PJI2d 3:3 [2003]). Assault involves putting a person in fear of a battery (*see* PJI2d 3:2 [2003]).

trative proceedings in New York State (see Public Health Law § 230). These proceedings are "quasi-judicial" in the general sense required for application of the doctrine of collateral estoppel. This is so notwithstanding the differences between these proceedings and a civil trial, which were pointed out by the Appellate Division: the absence of juries, the absence of CPLR article 31 disclosure and the inapplicability of the rules of evidence followed in a civil trial. Moreover, as the dissenting Justice at the Appellate Division noted, a physician's very livelihood— the continued ability to practice medicine—is at risk of loss in the Board for Professional Medical Conduct's disciplinary proceedings. These stakes provide considerable incentive for the physician to litigate issues fully in this forum.

Further, David v Biondo does not foreclose a plaintiff from invoking collateral estoppel when a Hearing Committee disciplines a physician. Rather, a physician cannot interpose an exculpatory finding as a shield in a subsequent civil action. This is so because the plaintiff in the civil action is not a "legally recognized party in interest" in the Hearing Committee's proceeding, and "enjoy[s] no legal or practical opportunity to litigate . . . civil law grievances within the framework of the [Hearing Committee's] proceeding" (92 NY2d at 321). In effect, a plaintiff cannot be said to have lost when a physician achieves a favorable result in the Hearing Committee's proceeding because the plaintiff never had a day in court. Contrariwise, when the physician loses in the Hearing Committee, assuming a full and fair opportunity to contest the identical issue, the physician has, indeed, had a day in court. Moreover, in David we were troubled by an additional factor not present when the physician loses before the Hearing Committee: the prospect that patients might refrain from reporting professional misconduct to the Office of Professional Discipline if, by so doing, they risked foreclosure of their civil actions for money damages.

Nonetheless, we conclude that the Appellate Division properly declined to apply the doctrine of collateral estoppel here in light of "the realities of the litigation" of this case, regardless of whether the formal prerequisites for collateral estoppel were present. When the Hearing Committee's members voted to revoke defendant's license, they were considering whether a recently convicted and sentenced sex offender should be allowed to practice medicine. Defendant's conviction was subsequently reversed and, importantly, on retrial he was acquitted of all the criminal charges stemming from plaintiff's allegations. There is no way to disentangle the Hearing Committee members' nonu-

nanimous determination of sexual misconduct from their contemporaneous awareness of the outcome of defendant's first criminal trial.[3] Because defendant was later acquitted after retrial, he should not be precluded from contesting liability for assault and battery in plaintiff's civil action.

Accordingly, the order of the Appellate Division should be affirmed, with costs; and the certified question answered in the affirmative.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSENBLATT and GRAFFEO concur.

Order affirmed, etc.

---

3. Plaintiff objects that the two majority members of the Hearing Committee expressly noted that "the outcome of [defendant's] criminal appeal would have no effect on the revocation of [defendant's] license" because the findings on those specifications unrelated to his criminal conviction were sufficient to warrant license revocation. Plaintiff also protests that defendant did not attack the validity of the Hearing Committee's factual determination in Supreme Court on the basis that his criminal conviction may have tainted the Committee's deliberations. The key consideration here, however, is not the outcome of defendant's criminal appeal alone, but his subsequent acquittal after retrial. The acquittal, which occurred after Supreme Court rendered its decision, was specifically cited by the Appellate Division majority as a basis for its decision, as were the Hearing Committee's split vote and the handing down of its decision shortly after defendant's sentencing.