425 F.3d 126
 Chanel ARMSTRONG, a minor by her mother and natural guardian, Carol ARMSTRONG, Plaintiff-Appellee,
v.
BROOKDALE UNIVERSITY HOSPITAL AND MEDICAL CENTER and Dr. Leon Lewis, Defendants-Appellants,
Dr. Hani Takla, Dr. Mohammed Rahman, Darryl Coach, and Physicians and Employees of Brookdale University Hospital and Medical Center, Defendants.
 Docket No. 02-7801(L).
 Docket No. 03-9289(CON).
 United States Court of Appeals, Second Circuit.
 Argued: August 31, 2004.
 Decided: September 21, 2005.
 
 COPYRIGHT MATERIAL OMITTED Steven T. Mitchell, Stephen T. Mitchell, P.C., New York, NY, for Plaintiff-Appellee.
 Steven J. Ahmuty, Jr., Shaub, Ahmuty, Citrin & Spratt LLP, Lake Success, NY, (Christopher Simone on the brief) (of counsel to Wilson Elser Moskowitz Edelman & Dicker LLP), for Defendants-Appellants.
 Before: JACOBS and POOLER, Circuit Judges.*
 POOLER, Circuit Judge:
 
 
 1
 Defendants-appellants, Dr. Leon Lewis and Brookdale University Hospital and Medical Center ("Brookdale"), appeal a $1.35 million verdict in favor of plaintiff Chanel Armstrong ("Chanel") entered in the United States District Court for the Eastern District of New York (Sterling Johnson, Jr., Judge).
 
 
 2
 Three verdict sheet errors and the confusion they generated caused the jury in this tort action to render a verdict in favor of plaintiff on one count—performing a medical procedure without informed consent—inconsistent with its answers to specific interrogatories and to fail to reach another count—battery—on which interrogatory answers suggested it may have found in plaintiff's favor. Concluding that the verdict sheet errors deprived both defendant and plaintiff of a fair trial, we vacate the judgment and remand for a new trial on the uninformed consent and battery claims. Because there was insufficient evidence to support the verdict against Brookdale, we reverse that portion of the judgment and remand for entry of judgment in Brookdale's favor.
 
 BACKGROUND
 
 3
 On April 1, 1995, Chanel, then eleven years old, looked out her bedroom window and saw something moving in a bag on a ledge of the building. Chanel called her sister, Tashawn, who climbed onto the roof and rescued an infant from the bag. Tashawn then called 911 and, following the operator's directions, tied off the baby's umbilical cord. Shortly thereafter, emergency medical service personnel and police came to the apartment where Chanel lived. They suggested that Chanel was the baby's mother and that she had thrown it out the window. When Chanel's mother, Carol Armstrong ("Carol"), arrived home, the officers repeated their accusations and insisted that Carol bring Chanel to a hospital for an examination, suggesting that the only alternative was Chanel's detention.
 
 
 4
 Chanel and Carol claimed that at Brookdale, where the officers took them, Dr. Lewis and Dr. Hani Takla, resident physicians, examined Chanel without her consent and over the physical and verbal protests of both mother and daughter. The extent of the examinations is not entirely clear from the testimony, but both doctors admittedly touched Chanel, and Dr. Lewis admitted that he touched her vulva and separated her labia. The purpose of both examinations was to ensure that Chanel had not recently given birth to a baby, and, together, they established that it was "highly unlikely" that Chanel had given birth.
 
 
 5
 In February 1998, Chanel settled a lawsuit against New York City, its police department, the New York City Housing Authority, the New York City Police Department, and several police officers for $260,000. She then sued Dr. Lewis; Dr. Takla; Dr. Mohammad Rahman, a pediatric emergency room attending physician; Darryl Coach, a Brookdale social worker; and Brookdale. Although Chanel made many claims, including alleged violations of Sections 1983 and 1985, which provided the jurisdictional basis for her suit, the only claims that remain relevant are (1) medical malpractice against Drs. Takla, Lewis, and Rahman; (2) violation of New York Public Health Law § 2805, which governs the circumstances under which a health provider can be held liable for its failure to obtain informed consent before performing a medical procedure, against Dr. Lewis; (3) direct and vicarious hospital negligence; and (4) battery against Drs. Takla and Lewis.
 
 
 6
 In response to a verdict sheet, which is reproduced in pertinent part in Appendix A, the jury found that none of the defendants had engaged in malpractice in treating Chanel.[1] They were next asked, in question III(1), whether Takla, Lewis, or Rahman "obtain[ed] Plaintiff's consent to perform his examination?" The jury answered, "No" for each defendant. The verdict sheet then instructed the jury to proceed to question III(5) (proximate cause) if it found no consent and to question III(2) if it found that Carol or Chanel consented to the examinations. Questions III(2) through (4) included factors relevant to whether New York Public Health Law § 2805-d precluded an award of damages to Chanel based on defendants' failure to obtain informed consent prior to examining her. Most obviously, a plaintiff cannot recover damages for lack of informed consent if the doctor obtained her consent after giving her appropriate information. See N.Y. Pub. Health L. § 2805-d(1). Nor can the plaintiff recover for an uninformed consent if the procedure was simply diagnostic and did not involve "invasion or disruption of the integrity of the body" or the procedure was required because of an emergency. See id. § 2805-d(2). Finally, recovery is only possible if "a reasonably prudent person in the patient's position would not have undergone the treatment or diagnosis if he had been fully informed." Id. § 2805-d(3).
 
 
 7
 Following the verdict sheet's instructions, the jury moved to the proximate cause question and found that the doctors' examinations were a substantial factor in causing Chanel's injuries. It awarded no damages against Dr. Takla, $150,000 against Dr. Lewis, and $200,000 against Dr. Rahman.
 
 
 8
 The jury next answered "Yes" to question IV(1), whether the hospital's conduct was contrary to the standard of care for general hospitals. The following question, IV(2), asked whether the hospital's deviation from the standard was a proximate cause of plaintiff's injuries. It provided no space for an answer, but instructed that if the answer was "yes," the jury should proceed to question IV(3). In response to question IV(3), the jury awarded Chanel $1.5 million for past and future pain and suffering.
 
 
 9
 The instructions for the battery question, VI, included an admonition that the jury could not find battery with respect to any defendant that it had found liable for any form of negligence. In compliance with those instructions, the jury answered none of the battery questions.[2]
 
 
 10
 After the court finished reading the jury's answers with respect to the informed consent cause of action, defense counsel said: "There are some questions that we skipped over in doing the verdict. . . . Every question in each section has to be answered." The court read the remainder of the jury's responses and then sent the jury back to the jury room while the attorneys conferred.
 
 
 11
 Defense counsel then said: "Your Honor, I don't think this is the verdict, because they have not finished all of the questions. There's a lot of questions that were skipped over by the jury." He then pointed out that the jury had not answered the proximate cause question on the hospital malpractice claim.
 
 
 12
 After the court suggested that the Section 2805-d question had been answered completely, defense counsel said, "[a]ctually, not completely." A law clerk in attendance then added, "[f]ailed to answer Question Number 2, Question Number 3, Question Number 4, which are all predicate steps in getting to an ultimate decision." Plaintiff's counsel then noted that the jury had not answered the battery question. The court responded, "Didn't I say, in the instructions, if there is a decision with respect to negligence, you cannot have battery. But they still have to answer it; right?" Plaintiff's counsel agreed. However, defense counsel said, "I don't think they have to answer it, according to the court's instruction to them."
 
 
 13
 The court then instructed the jury to answer parts 2 through 4 of question III and the proximate cause question on the hospital's negligence. The jury found that (1) neither a non-emergency procedure nor a diagnostic procedure involving invasion or disruption of bodily integrity had occurred; (2) none of the doctors, "before obtaining plaintiff's consent to the procedure, provide[d] appropriate information"; (3) a "reasonably prudent person in Plaintiff's position" would not have given consent if she had been given appropriate information; and (4) the hospital's negligence was the proximate cause of Chanel's injuries.
 
 
 14
 Plaintiff's counsel pointed out that there was an inconsistency between the jury's finding that the procedure was neither a non-emergency nor an invasive diagnostic procedure and its award of damages and said, "I don't know if the court can give them an instruction as to that." Defense counsel responded: "Your Honor, it's my position that what their answers are, that's the verdict." Plaintiff's counsel argued that the jury's intent was to award damages and they "might be just confused by the question."
 
 
 15
 Over objection from defense counsel, the court recalled the jury and said:
 
 
 16
 Mr. Foreperson, I'll tell you what our confusion was. When you had the original verdict form, you came back, I think you answered Number 5, and you had awarded damages against Takla, Lewis and Rahman, and you had not answered 2, 3, and 4. Now with respect to Question Number 2, there is an inconsistency between 2 and 5. If you have 1 and 2 award damages and whatever your decision is, then the no for number 2 is inconsistent. Do you understand what I'm talking about?
 
 
 17
 The foreman responded "[o]kay," and the court said, "[w]hatever you want to do, I want you to go back and talk about it, and then come back out." The foreman explained that the jury originally did not answer parts 2, 3, and 4, of question III because the verdict sheet instructed the jurors to go to part 5 (proximate cause) if they found there was no consent in response to part 1. A clerk then said that the instruction to go to part 5 was a "typo." The court furnished the jury with a clean verdict sheet, which instructed the jurors to answer part 2 of Question 3 whether they answered part 1 yes or no.[3]
 
 
 18
 Using the new verdict sheet, the jury again found that neither Chanel nor Carol consented to the examinations. The jury changed its answer to III(2), finding this time that the examination was neither emergency treatment nor a diagnostic procedure not involving invasion or disruption of the body. By answering III(3) "no" for all three defendants, the jury again found that none of the defendants had given Chanel or Carol appropriate information about the examination. However, by changing its answer from "no" to "yes" in response to III(4), the jury also found that a reasonably prudent person given appropriate information would have consented to the examinations. Then, following the instruction after III(4) to "proceed to question # 5" if it had answered "yes" to III(4), the jury found that the procedure or examination was a substantial factor in causing injury to plaintiff. It awarded the same damages. The jury also answered all questions on the hospital's malpractice favorably to the plaintiff and awarded damages as it had previously. It did not answer any of the battery questions.
 
 
 19
 The district court subsequently granted post-verdict motions for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) as to the Public Health Law verdict against Dr. Rahman and for setoff of the $260,000 plaintiff received in settlement of her lawsuit against the municipal defendants. The district court denied defendants' remaining motions under Federal Rules of Civil Procedure 50(b) and 59.
 
 
 20
 Defendants filed a timely appeal, and plaintiffs a timely cross-appeal. The cross-appeal was subsequently dismissed for failure to file required forms. Defendants contend in relevant part that (1) various inconsistencies in the verdict warrant reversal or remand for a new trial; (2) under New York law, plaintiff cannot recover for emotional suffering on a negligence claim absent physical injury or exceptional circumstances; and (3) the evidence was legally insufficient to support the malpractice verdict against the hospital. Defendants raise numerous other arguments that are mooted by our disposition of the listed issues.
 
 DISCUSSION
 I. Standard of Review
 
 21
 We review de novo the district court's disposition of the motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b). Cobb v. Pozzi, 363 F.3d 89, 101 (2d Cir.2004). An order denying a new trial, however, may be reversed only if the district court abused its discretion. Tesser v. Board of Educ., 370 F.3d 314, 320 (2d Cir.2004). "A motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." Id.
 
 
 22
 II. Consent in Battery and Informed Consent/Malpractice Claims.
 
 
 23
 To recover for medical malpractice, a plaintiff must ordinarily show that her doctor deviated from the standard of care practiced by "reasonably prudent doctor[s]" in her locality. Nestorowich v. Ricotta, 97 N.Y.2d 393, 740 N.Y.S.2d 668, 671, 767 N.E.2d 125 (2002). However, even where the doctor adhered to the requisite standard of care in performing a procedure or conducting an examination, the patient may recover for injuries she suffered as a result of the procedure or examination if the doctor failed to obtain her informed consent and the claim is not barred by failure to demonstrate one of the several showings required by New York Public Health Law § 2805-d. See Suria v. Shiffman, 67 N.Y.2d 87, 499 N.Y.S.2d 913, 918, 490 N.E.2d 832 (1986).
 
 
 24
 For the convenience of the reader, we set forth the relevant portions of Section 2805-d.
 
 
 25
 § 2805-d. Limitation of medical, dental or podiatric malpractice action based on lack of informed consent
 
 
 26
 1. Lack of informed consent means the failure of the person providing the professional treatment or diagnosis to disclose to the patient such alternatives thereto and the reasonably foreseeable risks and benefits involved as a reasonable medical, dental, or podiatric practitioner under similar circumstances would have disclosed, in a manner permitting the patient to make a knowledgeable evaluation.
 
 
 27
 2. The right of action to recover for medical, dental or podiatric malpractice based on a lack of informed consent is limited to those cases involving either (a) non-emergency treatment, procedure or surgery, or (b) a diagnostic procedure which involved invasion or disruption of the integrity of the body.
 
 
 28
 3. For a cause of action therefor it must also be established that a reasonably prudent person in the patient's position would not have undergone the treatment or diagnosis if he had been fully informed and that the lack of informed consent is a proximate cause of the injury or condition for which recovery is sought.
 
 
 29
 N.Y. Pub. Health Law § 2805-d.
 
 
 30
 Battery lies against a person who "intentionally touches another person, without that person's consent, and causes an offensive bodily contact. . . . The intent required for battery is intent to cause a bodily contact that a reasonable person would find offensive." Jeffreys v. Griffin, 1 N.Y.3d 34, 769 N.Y.S.2d 184, 189 n. 2, 801 N.E.2d 404 (2003) (quoting New York Pattern Jury Instructions 2d 3:3 (2003)).
 
 
 31
 Thus, a completely unpermitted touching by a medical practitioner of a patient is a battery as distinct from a Section 2805-d claim. See, e.g., Cross v. Colen, 6 A.D.3d 306, 775 N.Y.S.2d 307, 308 (1st Dep't 2004) (claim sounded in battery where plaintiff's only claim "is that she simply did not consent to the procedure, and indeed expressly rejected it"); Laskowitz v. CIBA Vision Corp., 215 A.D.2d 25, 632 N.Y.S.2d 845, 846 (2d Dep't 1995) ("A problem in informed consent arises when a physician or other therapist obtains a consent to treatment adequate to insulate him from prosecution for criminal assault and from liability in a civil assault or battery action, but when, nonetheless, the patient contends that consent would have been withheld if an adequate disclosure had been made concerning his condition as well as the potential dangers of and alternatives to the proposed procedure or therapy.") Based on these decisions, we conclude that battery applies in the medical context only where the patient or her guardian gives no consent and the doctor intends to "cause a bodily contact that a reasonable person would find offensive." Jeffreys, 1 N.Y.3d 34, 769 N.Y.S.2d at 41 n. 2, 801 N.E.2d 404. On the other hand, an informed consent violation occurs when the doctor obtains consent without giving the patient appropriate information concerning risks and alternatives. See N.Y. Pub. Health Law § 2805-d.
 
 
 32
 III. The Verdict Sheets.
 
 
 33
 With this background in mind, we turn to the original verdict sheet's treatment of the informed consent and battery claims. When the jury held that the doctors did not obtain Carol's consent in response to Question III(1), they were directed to determine whether this failure was a proximate cause of Chanel's injuries. Their affirmative response led them to assess damages. This was error disadvantaging the defendants because, in order to find for the plaintiff on an informed consent theory, the jury must also find that the procedure was invasive, that it was not required by emergency conditions, that the doctors failed to give appropriate advice, and that a reasonable person given appropriate advice would have consented.
 
 
 34
 Defense counsel pointed out the error to the jury, and the court rectified it in part, requiring the jury to answer parts 2, 3, and 4 of Question III. However, despite plaintiff's request, the district court did not ask the jury to answer the battery questions, which they had not reached because they found negligence in response to Question III.
 
 
 35
 This approach—resubmitting the informed consent claim, but not the battery claim—to the jury was disadvantageous to the infant plaintiff. The jury's initial finding that Drs. Takla and Lewis touched plaintiff without her consent suggests that it might have found for plaintiff on the battery claim had it not been advised that it could not find battery if it found a species of negligence (including failing to give the plaintiff appropriate information).
 
 
 36
 When answers to special interrogatories are consistent with each other but inconsistent with the general verdict, the court may either enter judgment in accordance with the interrogatories or return the issue to the jury for further consideration. Fed.R.Civ.P. 49(b). Rule 49(b) does not, however, authorize the court to enter judgment based on the general verdict despite answers to interrogatories that conflict with that verdict. When first directed to answer question III(2), the jury found that the procedure at hand was neither a non-emergency procedure nor an invasive diagnostic procedure precluding any informed consent recovery. New York Public Health Law § 2805-d. Nevertheless, the jury inconsistently awarded damages. Under Rule 49(b), the court had two options: (1) entering judgment in accordance with the interrogatories, or (2) seeking further clarification. The judge chose the second option. We believe this was the better choice because entry of judgment in favor of defendants without allowing the jury to consider the battery claim would have been a miscarriage of justice and thus an abuse of discretion.
 
 
 37
 However, Judge Johnson's second attempt to obtain clarification from the jury fared little better than his first. He explained to them that answering "no" for III(2) and then awarding damages was inconsistent. True enough, but another error lurked in the verdict sheet that may have led the jury to another inconsistent verdict. Immediately after III(4)—the question asking whether a reasonable person would have consented had she been properly advised of the risks and benefits of the procedures—the verdict sheet instructed the jurors to proceed to question III(5), proximate cause, if it answered "yes." The proper direction, of course, would have been to proceed to question III(5) only if the jury answered III(4) "no," III(3), "no," and III(2), "yes." However, following the directions on the verdict sheet, the jury answered III(4) "yes," despite having reached the opposite conclusion in its prior deliberations; found proximate cause; and awarded plaintiff damages.
 
 
 38
 At that point, the second error in the verdict sheet should have prompted counsel to ask the court to obtain further clarification from the jury to cure the inconsistency. They did not do so. In addition, defendants, in making their post-verdict motions, relied on the inconsistency between the response the jury gave to interrogatory III(2)—when the issue was first submitted to them—and the general verdict but never addressed the inconsistency between III(4) and the general verdict. Nevertheless, the court's entry of judgment on the general verdict in the face of an interrogatory answer that mandated a contrary result was error. See Fed.R.Civ.P. 49(b).
 
 
 39
 Defendants' failure to point out the error in the verdict sheet that caused the jury to answer the proximate cause and damages question despite its finding, when the question was submitted to them for the third time, that a reasonable and appropriately informed person would have consented to the examinations waives their right to raise this inconsistency on appeal absent a showing of "fundamental error." See Jarvis v. Ford Motor Co., 283 F.3d 33, 60-62 (2d Cir.2002). An error is fundamental only if it is "so serious and flagrant that it goes to the very integrity of the trial" or "deprive[s] the jury of adequate legal guidance to reach a rational decision." Id. at 62. Section 2805-d clearly prohibits recovery if a reasonable and properly informed person would have consented, but the verdict sheet instead made such a reasonable person's consent a prerequisite to recovery. Thus, it misinformed the jurors in a critical way and undermined the integrity of the trial. We therefore find fundamental error, vacate the verdict, and remand for a new trial.[4]
 
 
 40
 III. The Battery Claim.
 
 
 41
 We now turn to the parallel question of whether Chanel is entitled to a new trial on her battery claim. As we have noted, plaintiff's counsel asked that the battery question be listed first on the verdict sheet, which would have obviated the problem that we now confront.[5] He also argued, after the jury returned its first verdict, that the jury should be required to answer the battery questions.
 
 
 42
 What plaintiff failed to do is to argue on appeal that, assuming the informed consent verdict is vacated, plaintiff should receive a new trial on her battery claim. Instead, plaintiff argues that the jury implicitly found in her favor on the battery claim by finding that the defendant doctors did not obtain consent for their examinations. This argument lacks merit; in order to find a battery, a jury must find that the contact was both unpermitted and offensive. See Jeffreys, 769 N.Y.S.2d at 189 n. 2, 801 N.E.2d 404. Although the jury found no consent, it did not reach Question VI parts (3) and (4), which asked whether each contact was offensive. The jury having found that the defendant doctors touched Chanel without permission, it was fundamental error to prevent the jury from answering the questions that would have completed its consideration of the battery claim.
 
 
 43
 The failure of plaintiffs to raise this argument in their briefs does not preclude us from reaching it because it presents a pure issue of law, Lambert v. Genesee Hosp., 10 F.3d 46, 56 (2d Cir.1993) (resolving a dispositive issue sua sponte because, in part, it was not necessary to resolve any issues of fact), and because failure to reach the claim would work a manifest injustice, United States v. Babwah, 972 F.2d 30, 35 (2d Cir.1992) (holding that a court has discretion to reach an argument not raised on appeal but preserved below to prevent a manifest injustice). There are no issues of fact relevant to the obligation of the jury to consider the battery claim, and manifest injustice will result if we do not reach it because (1) as we have already decided, fundamental error occurred; and (2) without reaching the argument, plaintiff would be forced to retry the informed consent claim on which the jury found in her favor but not be allowed to have a jury consider her battery claim, which the jury's answer to the consent question suggests may have been resolved in her favor. In sum, we direct a new trial because we believe the jury's failure to consider the battery claim was a miscarriage of justice. See Tesser, 370 F.3d at 320. Because Chanel's cross-appeal was dismissed, Dr. Takla is no longer a party to the appeal and we do not consider whether the battery claim against him should be reinstated.
 
 
 44
 V. Emotional Injury.
 
 
 45
 As an alternative basis for setting aside the informed consent verdict, defendants argue that the jury erred by granting damages for Chanel's emotional suffering because she incurred no physical injuries, was not threatened with physical harm, and did not demonstrate any other exceptional circumstances.
 
 
 46
 "In the absence of contemporaneous or consequential physical injury, courts have been reluctant to permit recovery for negligently caused psychological trauma, with ensuing emotional harm alone." Johnson v. State, 37 N.Y.2d 378, 372 N.Y.S.2d 638, 641, 334 N.E.2d 590 (1975). However, if a defendant owes a duty directly to the plaintiff, she may recover for emotional harm flowing directly from that breach. Id. at 642, 334 N.E.2d 590. A duty, in turn, exists when the psychological trauma suffered is within the "orbit of the danger and therefore within the orbit of the duty for the breach of which a wrongdoer may be held liable" Id. (quoting Palsgraf v. Long Island R.R. Co., 248 N.Y. 339, 343, 162 N.E. 99 (1928)) (internal quotation marks omitted). In addition to duty and breach, the plaintiff must produce sufficient evidence of causation of a substantial harm as well as circumstances demonstrating "a guarantee of genuineness." Id. at 642-43, 162 N.E. 99.
 
 
 47
 Like the district court, we do not believe that a New York court would, as a matter of law, rule out a recovery for emotional suffering in this case. We are inclined to believe that psychological trauma is well within the "orbit of danger" of forcing an eleven-year-old girl to submit to a gynecological examination. Dr. Lewis therefore owed a duty to Chanel to refrain from an unconsented-to examination. According to competent testimony in the record, he breached this duty. We are also unable to say as a matter of law that the present case lacks the requisite guarantee of genuineness.
 
 
 48
 VI. The Verdict against Brookdale.
 
 
 49
 Defendants contend that the malpractice verdict against Brookdale is inconsistent with the jury's findings that the individual doctors did not commit malpractice. They argue that there is no evidence in the record demonstrating that the hospital deviated from any known standard of care apart from the evidence offered against the physicians. In New York, a malpractice claim against a hospital can rest on vicarious liability for the negligence of a hospital employee who is a defendant in the lawsuit or on independent negligence of the hospital. See Boone v. North Shore Univ. Hosp., 12 A.D.3d 338, 784 N.Y.S.2d 151, 152 ( 2d Dep't 2004); Cannizzo v. Wijeyasekaran, 259 A.D.2d 960, 689 N.Y.S.2d 315, 316 (1999).
 
 
 50
 Although plaintiff's complaint contained a vicarious liability claim against Brookdale, the Armstrong jury was not charged that it could find the hospital negligent on a vicarious liability theory. Instead, the court told the jury that plaintiff's theory of negligence was that the hospital had "[a]n absence of proper written policies of procedures; poor training and lack of experience in the hospital's emergency-room staff." According to the court, plaintiffs also claimed that the hospital failed to require "its staff to follow well-recognized and established administrative regulations and hospital procedures." Plaintiff did not object to the omission of the vicarious liability charge. Nor do they claim now that the court erred by failing to charge vicarious liability. Moreover we see no plain or fundamental error in the lack of a vicarious liability instruction. Unlike the contradictory and confusing verdict sheet errors discussed above, the abandonment of a theory of recovery is a decision well within the normal range of strategic trial decisions and does not prevent a jury from reaching a rational conclusion. We therefore do not consider any argument regarding Brookdale's negligence based on vicarious liability.
 
 
 51
 Because the theory of hospital negligence submitted to the jury was not derivative, we must determine whether the record contained evidence from which a reasonable jury could conclude that the hospital itself deviated from the standard of care practiced by hospitals of its type. See Cobb, 363 F.3d at 101 (Rule 50 allows entry of judgment against a party on a particular issue "where there is no legally sufficient evidentiary basis for a reasonable jury to find for [a] party on that issue") (internal quotation marks omitted). Plaintiff points to no evidence of a general lack of proper procedures, poor training, or lack of experience on the part of hospital staff. Plaintiff's description of her proof at trial focuses almost exclusively on the defendant doctors and social worker. Similarly, the plaintiff's experts described no deviation from the general standard of care expected by a hospital. Dr. Kildare Clarke testified that Brookdale deviated from the rules of the Joint Commission on the Accreditation of Health Care Organizations because it did not ensure that its employees obtained an informed consent from Chanel, but he cited no evidence other than the conduct of the defendant doctors. In fact, Dr. Clarke testified that he had no familiarity with the usual practice involved in obtaining a consent at Brookdale. Similarly Dr. Joseph Wright testified that Brookdale deviated from the standard of care by failing to ensure that the attending physician, Dr. Rahman, properly supervised the residents, Drs. Takla and Lewis. However, his testimony was based solely on the failure of Dr. Rahman to sign Chanel Armstrong's chart, evidence that would not enable a reasonable jury to find that the hospital was independently negligent. In fact, plaintiff introduced evidence that it was hospital policy to require that a consent section on the hospital chart be signed. Finding no evidence of any kind to support any independent negligence, we reverse the negligence verdict against the hospital and direct the entry of judgment in favor of Brookdale.
 
 
 52
 VII. Defendants' remaining arguments.
 
 
 53
 Defendants' remaining arguments are largely mooted by our decision to vacate and remand for a new trial. First, they claim that two pieces of evidence containing admissions by Carol that she consented to the examinations were wrongfully excluded at trial. One of these—a television tape was excluded because it was not disclosed prior to trial. Dr. Lewis obviously can remedy this failure on remand. The other piece of evidence—a transcript of the pre-claim hearing—apparently was excluded as improper impeachment. Its exclusion was proper because Carol admitted that she gave the relevant testimony. Should Carol deny making the admission at a subsequent trial; the remaining defendant can offer and likely obtain admission of the disputed transcript.
 
 
 54
 Also moot is defendants' argument that the verdict sheet's failure to require the jury to set an aggregate amount of damages and then assess percentages of blame contributed to an excessive verdict. See Bender v. City of New York, 78 F.3d 787, 792-95 (2d Cir.1996). On remand, there will be only one defendant, Dr. Lewis, so the problem will not arise in the same form.
 
 
 55
 We decline to reach defendants' claims that (1) the damages were excessive, and (2) a greater equitable setoff is required in light of the changed procedural posture on remand, which may moot them.
 
 CONCLUSION
 
 56
 We reverse the judgment below against Brookdale and remand for entry of judgment in its favor and vacate and remand for a new trial on the battery claim and the informed consent/malpractice claim against Dr. Lewis.
 
 APPENDIX A
 
 57
 PERTINENT PORTIONS OF THE FIRST VERDICT SHEET WITH INITIAL RESPONSES
 
 II. Malpractice: Physician
 
 58
 1) Did the defendant engage in medical malpractice?
 
 
 59
 Dr. Hani Takla Yes ____ No x 
 Dr. Leon Lewis Yes ____ No x 
 Dr. Mohammed Rahman Yes ____ No x
 
 
 60
 If Yes, proceed to question # 2.
 
 
 61
 . . . .
 
 III. New York Public Health Law § 2805-d:
 
 62
 1) Did Defendant obtain Plaintiff's consent to perform his examination?
 
 
 63
 Dr. Hani Takla Yes ____ No x 
 Dr. Leon Lewis Yes ____ No x 
 Dr. Mohammed Rahman Yes ____ No x
 
 
 64
 If Yes, proceed to question # 2 with respect to that defendant. If No, proceed to question # 5.
 
 
 65
 2) Does the alleged right of action to recover for medical malpractice based on a lack of informed consent involve either (a) non-emergency treatment, procedure or surgery, or (b) a diagnostic procedure which involved invasin or disruption of the integrity of the body?
 
 Yes ____ No ____
 
 66
 If Yes, proceed to question # 3.
 
 
 67
 3) Did Defendant, before obtaining Plaintiff's consent to the procedure, provide appropriate information?
 
 
 68
 Dr. Hani Takla Yes ____ No ____
 Dr. Leon Lewis Yes ____ No ____
 Dr. Mohammed Rahman Yes ____ No ____
 
 
 69
 If Yes, proceed to question # 4 with respect to that defendant.
 
 
 70
 4) Would a reasonably prudent person in Plaintiff's position at the time consent was given have given such consent if given appropriate information.
 
 Yes ____ No ____
 
 71
 If Yes, proceed to question # 5.
 
 
 72
 5) Was the procedure or examination a substantial factor in causing the injury to Plaintiff?
 
 Yes x No ____
 
 73
 If Yes, proceed to question # 6.
 
 
 74
 6) What damages, if any, should be awarded to plaintiff by each defendant for failing to receive informed consent?
 
 
 75
 Dr. Hani Takla: Compensatory: Past Pain and Suffering 0
 __________
 Future Pain and Suffering 0
 __________
 Total Compensatory: 0
 __________
 Punitive: 0
 ___
Dr. Leon Lewis Compensatory: Past Pain and Suffering 100,000.00
 __________
 Future Pain and Suffering 50,000.00
 __________
 Total Compensatory: 150,000.00
 __________
 Punitive: 0
 ___
Dr. Mohammed Rahman Compensatory: Past Pain and Suffering 150,000.00
 __________
 Future Pain and Suffering 50,000.00
 __________
_________________________________ Total Compensatory: 200,000.00
 __________
 Punitive: 0
 ___
. . . .
 
 IV. Malpractice: Hospital
 
 76
 1) Was the Hospital's conduct contrary to the standard of care customarily followed by general hospitals under the same circumstances?
 
 Yes x No ____
 
 77
 If Yes, proceed to question # 2.
 
 
 78
 2) Did the Hospital's negligence result in the proximate cause of plaintiff's injuries? If Yes, proceed to question # 3.
 
 
 79
 3) What damages, if any, should be awarded to plaintiff on the basis of the Hospital's negligence?
 
 
 80
 Damage Amount: Compensatory: Past Pain and Suffering 1,000,000.00
 ____________
 Future Pain and Suffering 500,000.00
 ____________
______________________________________ Total Compensatory: 1,500,000.00
 ____________
 
 
 81
 . . . .
 
 VI. Battery
 
 82
 If you found that either Dr. Takla or Dr. Lewis were [sic] negligent in any of the above causes of action, you may not then find that they committed Battery. If, however, you have found that one or both of these individuals was not negligent in all of the above causes of actions [sic], you may then proceed to the questions below to determine whether that individual committed Battery.
 
 
 83
 1) Do you find that Dr. Takla intentionally examined Chanel Armstrong without her mother's consent?
 
 Yes ____ No ____
 
 84
 2) Do you find that Dr. Lewis intentionally examined Chanel Armstrong without her mother's consent?
 
 Yes ____ No ____
 
 85
 If Yes to question # 1 or # 2, proceed to question # 3.
 
 
 86
 3) Was the contact that resulted from Dr. Takla's examination of Chanel Armstrong offensive?
 
 Yes ____ No ____
 
 87
 4) Was the contact that resulted from Dr. Lewis's examination of Chanel Armstrong offensive?
 
 Yes ____ No ____
 
 88
 If Yes to question # 3 or 4, proceed to question # 5.
 
 
 89
 5) What damages are owed to Chanel Armstrong for Battery?
 
 
 90
 Dr. Hani Takla: Compensatory: Past Pain and Suffering ____
 Future Pain and Suffering ____
 Total Compensatory: ____
_______________ Punitive: ___
Dr. Leon Lewis Compensatory: Past Pain and Suffering
 
 
 91
 Future Pain and Suffering ____
 Total Compensatory: ____
______________ Punitive: ___
 
 APPENDIX B
 
 92
 PERTINENT PORTIONS OF AMENDED VERDICT SHEET WITH RESPONSES
 
 II. Malpractice: Physician
 
 93
 1) Did the defendant engage in medical malpractice?
 
 
 94
 Dr. Hani Takla Yes ____ No x 
 Dr. Leon Lewis Yes ____ No x 
 Dr. Mohammed Rahman Yes ____ No x
 
 
 95
 If Yes, proceed to question # 2.
 
 
 96
 . . . .
 
 III. New York Public Health Law § 2805-d
 
 97
 1) Did Defendant obtain Plaintiff's consent to perform his examination?
 
 
 98
 Dr. Hani Takla Yes ____ No x 
 Dr. Leon Lewis Yes ____ No x 
 Dr. Mohammed Rahman Yes ____ No x
 
 
 99
 Proceed to question # 2.
 
 
 100
 2) Does the alleged right of action to recover for medical malpractice based on a lack of informed consent involve either (a) non-emergency treatment, procedure or surgery, or (b) a diagnostic procedure which involved invasion or disruption of the integrity of the body?
 
 Yes x No ____
 
 101
 If Yes, proceed to question # 3. If no, proceed to Roman Numeral IV: Malpractice: Hospital
 
 
 102
 3) Did Defendant, before obtaining Plaintiff's consent to the procedure, provide appropriate information?
 
 
 103
 Dr. Hani Takla Yes ____ No x 
 Dr. Leon Lewis Yes ____ No x 
 Dr. Mohammad Rahman Yes ____ No x
 
 
 104
 If Yes, proceed to question # 4 with respect to that defendant.
 
 
 105
 4) Would a reasonably prudent person in Plaintiff's position at the time consent was given have given such consent if given appropriate information.
 
 Yes x No ____
 
 106
 If Yes, proceed to question # 5.
 
 
 107
 5) Was the procedure or examination a substantial factor in causing the injury to Plaintiff?
 
 Yes x No ____
 
 108
 6) What damages, if any, should be awarded to plaintiff by each defendant for failing to receive informed consent?
 
 
 109
 Dr. Hani Takla: Compensatory: Past Pain and Suffering 0
 __________
 Future Pain and Suffering 0
 __________
 Total Compensatory: 0
 __________
_______________ Punitive: 0
 ___
Dr. Leon Lewis Compensatory: Past Pain and Suffering 100,000.00
 __________
 Future Pain and Suffering 50,000.00
 __________
 Total Compensatory: 150,000.00
 __________
______________ Punitive: 0
 ___
Dr. Mohammed Rahman Compensatory: Past Pain and Suffering 150,000.00
 __________
 Future Pain and Suffering 50,000.00
 __________
 Total Compensatory: 200,000.00
 __________
 Punitive: 0
 
 IV. Malpractice: Hospital
 
 110
 1) Was the Hospital's conduct contrary to the standard of care customarily followed by general hospitals under the same circumstances?
 
 Yes x No ____
 
 111
 If Yes, proceed to question # 2.
 
 
 112
 2) Did the Hospital's negligence result in the proximate cause of plaintiff's injuries?
 
 
 113
 If Yes, proceed to question # 3. yes (handwritten notation)
 
 
 114
 3) What damages, if any, should be awarded to plaintiff on the basis of the Hospital's negligence?
 
 
 115
 Damage Amount: Compensatory: Past Pain and Suffering 1,000,000.00
 ____________
 Future Pain and Suffering 500,000.00
 ____________
______________________________ Total Compensatory: 1,500,000.00
 ____________
 
 
 116
 . . . .
 
 VI. Battery
 
 117
 If you found that either Dr. Takla or Dr. Lewis were [sic] negligent in any of the above causes of action, you may not then find that they committed Battery. If, however, you have found that one or both of these individuals was not negligent in all of the above causes of actions [sic], you may then proceed to the questions below to determine whether that individual committed Battery.
 
 
 118
 1) Do you find that Dr. Takla intentionally examined Chanel Armstrong without her mother's consent?
 
 Yes ____ No ____
 
 119
 2) Do you find that Dr. Lewis intentionally examined Chanel Armstrong without her mother's consent?
 
 Yes ____ No ____
 
 120
 If Yes to question # 1 or # 2, proceed to question # 3.
 
 
 121
 3) Was the contact that resulted from Dr. Takla's examination of Chanel Armstrong offensive?
 
 Yes ____ No ____
 
 122
 4) Was the contact that resulted from Dr. Lewis's examination of Chanel Armstrong offensive?
 
 Yes ____ No ____
 
 123
 If Yes to question # 3 or 4, proceed to question # 5.
 
 
 124
 5) What damages are owed to Chanel Armstrong for Battery?
 
 
 125
 Dr. Hani Takla: Compensatory: Past Pain and Suffering ____
 Future Pain and Suffering ____
 Total Compensatory: ____
___________________ Punitive: ___
Dr. Leon Lewis Compensatory: Past Pain and Suffering ____
 Future Pain and Suffering ____
 Total Compensatory: ____
__________________ Punitive: ___
 
 
 
 Notes:
 
 
 *
 The Honorable Ellsworth Van Graafeiland, who was a member of this panel passed away following oral argument. The remaining two panel members, who agree on the disposition, issue this opinion pursuant to Local Rule 0.14(b)
 
 
 [1]
 The jury also found in favor of the defendants on Chanel's Section 1983 claim and in favor of Couch, on a negligence claim
 
 
 [2]
 Plaintiff's counsel had asked, without success, that the jury be required to consider the battery claim first and then instructed that it need not answer the malpractice questions concerning the individual defendants if it found in plaintiff's favor on the battery claim. The court denied this request
 
 
 [3]
 The new verdict sheet with the jury's responses is Appendix B
 
 
 [4]
 We do not direct the district court to enter judgment in favor of defendants because the confusion in the verdict sheets and after the verdict was rendered leaves us uncertain as to how a properly instructed jury would have answered the pertinent interrogatories
 
 
 [5]
 The court also could have avoided the problem if the jury had been directed that if they answered "Yes" to Question III(1), i.e., found that no-one consented to the examination, they should proceed to the battery questions and not continue with the informed consent questions. If there was no consent, there could not have been an informed consent