FRANK GIELSKIE, Respondent, v. STATE OF NEW YORK, Appellant.
(Claim No. 34380.)

Third Department; May 16, 1960.

*Louis J. Lefkowitz, Attorney-General* (*Paxton Blair* and *Edward R. Murphy* of counsel), for appellant.

*Twining & Fischer* (*William H. Johnson, Jr.,* of counsel), for respondent.

*Per Curiam.* Claimant is permanently and totally paralyzed below the tenth vertebrae as a result of an intraspinous injection by his own physician of tetanus antitoxin serum (hereinafter called T. A. T.), made and distributed to doctors, free of charge, with accompanying instructions and information, by the State Department of Health as a part of its public service.

The case is unique and novel, particularly in two respects: (1) although a negligence case, there is no dispute as to the basic facts; and, (2) there is no case close enough factually to claimant's theory of negligence to be of value as a precedent. The State does not cite a single case in its brief. Claimant cites only cases dealing with negligence and malpractice in general, which recite only general rules well understood and not questioned on this appeal.

Eliminating the elements which are unquestioned, the only issue becomes exceptionally narrow. There is no claim that there was anything wrong with the T. A. T. which the State furnished to claimant's doctor. It is undisputed that claimant actually contracted the disease known as tetanus (despite the administration of T. A. T. as a prophylactic or a preventative measure) as a result of a compound comminuted fracture of a finger sustained while participating in a horse-pulling contest with which the State had no connection. It is entirely undisputed that the introduction of any foreign substance into the spinal canal would have caused the disastrous result.

The alleged negligence of the State is based solely upon printed information or instruction to doctors accompanying the container of T. A. T. This printed paper contained considerable information about tetanus in general, and also stated: "The antitoxin may be administered intraspinously, intravenously and intramuscularly. The intraspinous and the intravenous methods are generally recognized as far superior to the intramuscular for the initial injections. There is considerable difference of opinion as to which is the more effective route. On the basis of reports received on cases treated in the State, combined intravenous and intraspinous administration appears to possess an advantage. Antitoxin should be administered at the

earliest possible moment and in adequate amounts." Scrutinizing this information promulgated by the State Department of Health to doctors (who have or could have access to all of the medical journals, textbooks and papers available to the State), it simply mentions three methods for the administration of T. A. T. Concededly there are three methods. It then says: "There is considerable difference of opinion as to which is the more effective route." All of the medical testimony concedes that this is true, and that there is a difference of opinion, of which the State warned. The paper then states: "On the basis of reports received on cases treated in the State, combined intravenous and intraspinous administration appears to possess an advantage." The record discloses that this is a particularly true statement based upon requested reports of results from doctors in this State.

The very crux of the claim of negligence narrows to this statement contained in the paper distributed with the T. A. T.: "The intraspinous and the intravenous methods are generally recognized as far superior to the intramuscular for the initial injections." Claimant contends that in 1954, when this T. A. T. was administered, the intraspinous and intravenous methods were not generally recognized as superior, and that the State was negligent in saying so. It must be borne constantly in mind that the State mentioned all three methods of administering the T. A. T., and mentioned that there was a considerable difference of opinion, so that a doctor with professional qualifications might elect which method to use.

One cannot read this record, which consists largely of medical testimony, without coming to certain general conclusions: (1) that tetanus is a rare disease in the United States, almost always fatal if untreated; (2) that the administration of T. A. T. is the only known remedy; (3) that any method of administering T. A. T. is dangerous and involves a risk; (4) that once contracted the disease progresses rapidly, and prompt and drastic measures are essential to avoid fatal consequences; and (5) that there is a difference of respectable medical opinion as to the most effective administration of T. A. T.

Medicine is not an exact science. Even claimant's doctors agree that prior to 1954 the intraspinous administration of T. A. T. was generally accepted as the most effective. They claim that the weight of medical authority had changed by 1954 because there was a greater risk in the introduction of any foreign substance in the spinal canal. On further experience medical opinion may change again. The weight of medical authority does not necessarily depend upon the number of

doctors who agree to a certain method, and the weight to be attached to individual ˙medical opinion must necessarily be gauged by the honest judgment of those who must accept or reject it.

There is no authority that a doctor, whether employed by the State or in private practice, must use what some doctors consider the best method if a method which is accepted by respectable medical authority is adopted.

We do not toss aside as lightly as respondent's brief the State's argument that there are two schools of medical thought upon the method of administration of T. A. T. The record demonstrates that medical opinion and medical textbooks differ on the subject. By honestly accepting one field of respectable medical opinion, though other, and perhaps more numerous, medical opinions may differ, does not constitute negligence simply because in a particular case the result was disastrous. To hold the State liable under the circumstances presented here would mean that either the State must render no public service at all or be an insurer against any bad results that might follow.

The tragic result suffered by this claimant must be attributed to a misfortune of life and not to the State Department of Health in honestly trying to assist in preventing or lessening the consequences of a misfortune with which it had nothing to do.

The judgment should be reversed and the claim dismissed, without costs.

BERGAN, P. J., COON, GIBSON, HERLIHY and REYNOLDS, JJ., concur.

Judgment reversed, on the law and the facts, and the claim dismissed, without costs. Settle order.