Memorandum. The plaintiff mother gave birth to the infant plaintiff, who, born a "cri-du-chat” child, was doomed by that condition to a life of helpless physical and mental retardation. This action, brought by the child and its parents, is grounded on defendants’ alleged medical malpractice in failing, when consulted for genetic counseling during the course of the pregnancy, to have advised and performed an amniocentesis, a diagnostic procedure which the plaintiffs assert would have revealed that the child the mother was bearing was afflicted with a chromosomal defect which preordained its abnormality and, on the basis of which, an informed decision could have been made as to whether an abortion that would terminate the fetus’ existence should be obtained.*
Aside from the issues of negligence and proximate cause which they thereby seek to raise, plaintiffs’ suit would have us freshly examine or re-examine a complex of legal questions. Among them is whether each of the parents has a cause of action to recover damages for the emotional effect produced on them by the birth of their deformed child and for the general and special damages that will have been occasioned to them in its rearing (see Chapman v Schultz, 47 AD2d 806, decided on authority of Ziemba v Steinberg, 45 AD2d 230 [3-2 decision]). A subsidiary question is whether one or more of these categories of damages is too speculative to support a recovery. Posited too is whether the scope of the duty owed by the defendants flows directly to the patient-mother who was the object of the consultation, or whether her role is to be analogized to that of a bystander to an accident who witnesses injury to another (cf. Tobin v Grossman, 24 NY2d 609).
Also presented is whether, conceptually, an unborn child may have a recognizable legal right to recover for a "wrongful *820 life”. The seemingly metaphysical or imponderable queries that would result from such a concept could conceivably lead to alternative damage theories, including one that would require the evaluation of the difference between a life of physical and mental impairment and one of a person who never is born (Note, A Cause of Action for "Wrongful Life”: A Suggested Analysis, 55 Minn L Rev 58; see Stewart v Long Is. Coll. Hosp., 35 AD2d 531, affd 30 NY2d 695; Gleitman v Cosgrove, 49 NJ 22).
And, preferred here too is the near-threshold question of whether the public policy considerations inherent in the statutory ban on abortion as it existed in this State in 1969, when the birth here took place (former Penal Law, § 125.05; cf. former Education Law, § 6514, subd 2, par [e]; L 1967, ch 680, § 22), reached out to affect abortions of pregnancies obtainable by New York parents in other jurisdictions where such procedures were then permitted by law (see Stewart v Long Is. Coll. Hosp., supra).
But, however interesting those questions may otherwise be, we cannot reach them here. For our review of the record does not demonstrate that an issue of fact was raised by the plaintiffs in the face of the uncontroverted showing by the defendants that, on the basis of the patient’s medical history and the state of medical knowledge regarding the use of the amniocentesis test in 1969, the defendants’ failure to perform the test was no more than a permissible exercise of medical judgment and not a departure from then accepted medical practice (Pike v Honsinger, 155 NY 201).
Accordingly, the order of the Appellate Division, which dismissed the six causes of action here on appeal, must be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
Order affirmed, with costs, in a memorandum.

 Two of plaintiffs eight causes of action—for failure to promptly notify the parents of the birth of their abnormal child—are not the subject of this appeal.