97 N.Y.2d 393 (2002)
767 N.E.2d 125
740 N.Y.S.2d 668
NANCY NESTOROWICH, Individually and as Executrix of WALTER S. NESTOROWICH, Deceased, Appellant,
v.
JOHN J. RICOTTA, Respondent, et al., Defendant.
Court of Appeals of the State of New York.
Argued January 9, 2002.
Decided February 14, 2002.
*394 Michael G. Cooper, Hamburg, for appellant.
Brown & Tarantino, LLP, Buffalo (Ann M. Campbell of counsel), for respondent.
*395 Ward Norris Heller & Reidy LLP, Rochester (Harold A. Kurland and Kathryn K. Lee of counsel), for Healthcare Association of New York State and another, amici curiae.
Chief Judge KAYE and Judges LEVINE, WESLEY, ROSENBLATT and GRAFFEO concur with Judge CIPARICK; Judge SMITH dissents *403 and votes to reverse and order a new trial in a separate opinion.

OPINION OF THE COURT
CIPARICK, J.
The primary issue on this appeal is whether, in a medical malpractice action arising out of a surgical procedure, a *396 trial court may properly give the "error in judgment" charge absent a showing that a doctor has chosen one of two or more medically acceptable alternative treatments or techniques. We hold that Supreme Court erred in giving the charge in this case, but that on the facts presented the error was harmless.

I.
In 1994, defendant, Dr. John Ricotta, a vascular surgeon, performed an adrenalectomy on decedent, Walter Nestorowich. This surgery was the culmination of decedent's decade-long bout with renal cell carcinoma. Dr. Joseph Greco, not a party to this action, first diagnosed the cancer in 1983. Shortly thereafter, in an attempt to contain the disease, Greco removed decedent's right kidney and adrenal gland. Unfortunately, the cancer persisted and in 1991, a significant portion of decedent's right lung was removed. The cancer continued to metastasize and in 1993, Greco discovered a large tumor on decedent's left adrenal gland.
Interferon treatment proved unavailing, and the tumor grew to approximately nine inches in length, three times the size of the adrenal gland itself. The growth was, in all respects, extraordinary. Greco recommended surgery to remove the mass, but decedent feared that the operation would result in the loss of his remaining kidney and ultimately force him to undergo dialysis. Nevertheless, decedent agreed that surgery would provide a better chance for survival, and Greco referred decedent to defendant. Defendant met with decedent and his wife, and disclosed the risks inherent in such a procedure. Decedent signed a consent form.
Defendant performed the left adrenalectomy on April 6, 1994 at Millard Fillmore Hospital. A number of factors increased the difficulty of this typically arduous procedure. At the time of the surgery, decedent weighed approximately 300 pounds. His size increased the depth of the surgical cavity, and impaired the doctor's ability to see. The tumor was surrounded by an uncertain number of blood vessels and small arteries, all of which were a potential source of bleeding. Defendant controlled the bleeding by meticulously tying off, or ligating, "bleeders" and vessels as he encountered them. Additionally, the tumor, organs and vessels were encased in layers of muscle and fatty tissue. Ultimately, defendant completed the surgery, removing the tumor in its entirety.
Immediately following the surgery, decedent's urine output was noticeably abnormal. After performing a renal scan, defendant *397 realized that he had inadvertently ligated decedent's renal artery thus preventing blood flow to the kidney. Within hours of the adrenalectomy, defendant rushed decedent back to surgery, located the renal artery and restored blood flow to the kidney. Despite the superficial success of both surgeries, the ligation caused irreparable harm to the plaintiff's remaining kidney.
In 1995, decedent and his spouse commenced this medical malpractice action against defendant and the Hospital.[1] Decedent died the following year of causes unrelated to the surgery, and his wife was substituted as the sole plaintiff in this action. At trial plaintiff argued that defendant negligently ligated the renal artery, thereby causing decedent's injury. Plaintiff's expert, Dr. Selwyn Z. Freed, opined that under no circumstances would ligation of the renal artery be considered medically acceptable, and therefore defendant breached his duty of care. Although Freed testified that ligation of smaller vessels may at times be unnecessary, at no point during the trial did plaintiff, or her expert, contest the professional validity of defendant's choice to ligate "bleeders" and arteries in an effort to control bleeding and prevent hemorrhaging. Defendant called Greco and an expert, Dr. Jeffrey L. Kaufman, as witnesses. Both doctors claimed that despite defendant's inadvertent ligation of the renal artery, his conduct was nevertheless within the bounds of acceptable medical practice.
Following an extensive charge conference, and over plaintiff's objection, Supreme Court gave the "error in judgment" charge to the jury.[2] The jury returned a verdict in defendant's favor. Supreme Court denied plaintiff's motion to set aside the verdict and dismissed the complaint. On plaintiff's appeal, the Appellate Division affirmed, concluding that Supreme Court did not err in giving an "error in judgment" charge, and if it did, the error was harmless. Two Justices dissented and voted to reverse. We now affirm based on harmless error.

*398 II.
The prevailing standard of care governing the conduct of medical professionals has been a fixed part of our common law for more than a century (see generally Pike v Honsinger, 155 NY 201 [1898]). The Pike standard demands that a doctor exercise "that reasonable degree of learning and skill that is ordinarily possessed by physicians and surgeons in the locality where [the doctor] practices" (id. at 209).[3] Although malpractice jurisprudence has evolved to accommodate advances in medicine, the Pike standard remains the touchstone by which a doctor's conduct is measured and serves as the beginning point of any medical malpractice analysis.
A doctor is charged with the duty to exercise due care, as measured against the conduct of his or her own peersthe reasonably prudent doctor standard. Implicit within the concept of due care is the principle that doctors must employ their "best judgment in exercising * * * skill and applying [their] knowledge" (id.; see also Johnson v Yeshiva Univ., 42 NY2d 818 [1977]; Topel v Long Is. Jewish Med. Ctr., 55 NY2d 682 [1981]). The notion of "best judgment" assures conformance with the prevailing standard of care and accepted medical practice.[4] However, a doctor is not liable in negligence merely because a treatment, which the doctor as a matter of professional judgment elected to pursue, proves ineffective or a diagnosis proves inaccurate. Not every instance of failed treatment or diagnosis may be attributed to a doctor's failure to exercise due care (see Schrempf v State of New York, 66 NY2d 289, 295 [1985]).
The resolution of medical malpractice cases, insofar as a doctor's conduct is measured by an objective reasonably prudent doctor standard, is dependent on the specific facts surrounding each claim. Although the Pike standard is universally applicable to each of these factually diverse situations, the proper evaluation of this standard is sometimes complemented by the application of collateral doctrines, such as the "error in judgment" doctrine. As this Court explained in Pike,
"[t]he rule requiring [a doctor] to use his best judgment *399 does not hold him liable for a mere error of judgment, provided he does what he thinks is best after careful examination. His implied engagement with his patient does not guarantee a good result, but he promises by implication to use the skill and learning of the average physician, to exercise reasonable care and to exert his best judgment in the effort to bring about a good result" (155 NY at 210 [first emphasis added]).
It follows, therefore, that a doctor may be liable only if the doctor's treatment decisions do not reflect his or her own best judgment, or fall short of the generally accepted standard of care (see e.g. Davis v Patel, 287 AD2d 479, 480 [2d Dept 2001]; Ibguy v State of New York, 261 AD2d 510 [2d Dept 1999]).
The Appellate Divisions, as well as certain other jurisdictions, have embraced an "error in judgment" charge (see e.g. Spadaccini v Dolan, 63 AD2d 110 [1st Dept 1978]; Schreiber v Cestari, 40 AD2d 1025 [2d Dept 1972]; Gielskie v State of New York, 10 AD2d 471 [3d Dept 1960], affd 9 NY2d 834; Martin v Lattimore Rd. Surgicenter, 281 AD2d 866 [4th Dept 2001]; Logan v Greenwich Hosp. Assn., 191 Conn 282, 299, 465 A2d 294, 303-304 [1983]). As it has developed, the charge has been appropriate in instances where parties present evidence of a choice between or among medically acceptable alternatives or diagnoses (Oelsner v State of New York, 66 NY2d 636 [1985]; Martin, 281 AD2d at 866; 1A NY PJI3d 701, caveat 2 [2001]). The "error in judgment" charge, as articulated in PJI 2:150, paragraph (5), states: "[a] doctor is not liable for an error in judgment if [the doctor] does what (he, she) decides is best after careful evaluation if it is a judgment that a reasonably prudent doctor could have made under the circumstances" (PJI 2:150, ¶ [5]). Absent a showing that "defendant physician considered and chose among several medically acceptable treatment alternatives" the error in judgment charge has been found inappropriate (Martin, 281 AD2d at 866).
This limited application of the error in judgment charge preserves the established standard of care. Broader application of the charge would transform it from a protection against second-guessing of genuine exercises of professional judgment in treatment or diagnosis into a cloak for professional misfeasance. The doctrine was intended to protect those medical professionals who, in exercising due care, choose from two or more responsible and medically acceptable approaches. A distinction must therefore be made between an "error in judgment" *400 and a doctor's failure to exercise his or her best judgment. Giving the "error in judgment" charge without regard for this distinction would otherwise relieve doctors whose conduct would constitute a breach of duty from liability.

III.
This medical malpractice action is not based on an alleged error in judgment. Plaintiff has consistently maintained that defendant's mistake was purely mechanical, constituting negligence. Never did plaintiff urge that defendant's mistake was an "error in judgment" occasioned by a choice between two or more medically acceptable treatment alternatives. Indeed, neither party contends that ligation of the renal artery is an acceptable alternative means of treatment, nor does the evidence show that the defendant elected to ligate decedent's renal artery in the exercise of his professional judgment. There having been no choice between medically acceptable treatments, we agree with the dissenting Justices that "the evidence simply raised the issue whether defendant deviated from the degree of care that a reasonably prudent physician would have exercised under the same circumstances, and therefore an `error in judgment' charge with respect to the manner in which defendant performed the surgical procedure was improper" (Nestorowich, 281 AD2d 870, 872 [Pigott, Jr., P. J., and Wisner, J., dissenting]).
In this case, however, the improper charge does not constitute reversible error. CPLR 2002 provides that "[a]n error in a ruling of the court shall be disregarded if a substantial right of a party is not prejudiced." Moreover, in determining the prejudicial impact of an erroneous instruction, the instruction as a whole must be evaluated (4 Weinstein-Korn-Miller, NY Civ Prac ¶ 2002.03 [2000]).
Here the "error in judgment" instruction was harmless. The highly unusual risks and difficulties of the underlying medical procedure were acknowledged. The tumor was of extraordinary size, decedent's obesity greatly increased the depth of the surgical cavity and impaired the defendant's ability to see during the operation, and the tumor, organs and vessels were surrounded in fatty tissue. The entire surgical procedure was laborious and lengthy. Plaintiff was made fully aware that an undisputed risk of the procedure was losing the use of his remaining kidney. The alternative to surgery, however, was the unchecked advancement of the tumor on his adrenal gland. Moreover, defendant did not argue on summation that the inadvertent *401 ligation of the renal artery represented a choice between two medically accepted practices. Ultimately, the jury was given an opportunity to evaluate the evidence in accord with the proper standardwhether defendant deviated from acceptable medical practice. Finally, viewing the charge as a whole, and in light of the evidence presented, counsel's arguments and the otherwise proper jury instructions, there is no indication that the "error in judgment" charge clouded the issue or negatively influenced the jury's determination.
The record did not indicate that plaintiff was deprived of a fair trial, or that the law in any other portion of the charge was inaccurate. There is ample evidence to support the verdict and the finding that defendant's conduct conformed to prevailing, acceptable medical standards. Insofar as the evidence so clearly supports a verdict in favor of the defendantand despite the inappropriate addition of the error in judgment instruction to an otherwise accurate, thorough and complete chargeSupreme Court's error did not prejudice a substantial right of the plaintiff. In light of the unique facts of this case, the "error in judgment" charge was harmless.
Plaintiff's remaining contentionthat defendant's expert offered speculative and therefore inadmissible testimonyis wholly without merit.
Accordingly, the order of the Appellate Division should be affirmed without costs.
SMITH, J. (dissenting).
I agree with the majority that the error in judgment charge should not have been given. I disagree that the giving of that charge was harmless. Plaintiff alleged and sought to prove that the defendant doctor was negligent in ligating the renal artery during surgery. Plaintiff was entitled to have the case tried solely on that basis and to have a jury evaluate the evidence, no matter how difficult the operation was, in order to determine if the defendant was negligent. In giving the error of judgment charge, the court clouded the issue which was before the jury. No one can determine what the effect of that charge was on the jury and its decision. Any determination here that the error was harmless is mere speculation.
As the majority states, the error in judgment charge should be given only where there are two or more possible courses of action and a doctor chooses one (see, PJI 2:150, ¶ 5, caveat 2 [citing Pike v Honsinger, 155 NY 201 (1898)]). At the charge *402 conference, the Trial Judge tried to determine what the parties wanted in terms of a judgment charge. The Trial Judge asked plaintiff's attorney whether his contention was that the doctor erred in judgment in attempting to tie off vessels (or "bleeders") or mistook the renal artery for a vessel. Plaintiff's attorney stated that the plaintiff claimed that the doctor erred in mistakenly tying off the renal artery.
In this case, the trial court gave a standard negligence charge and then followed immediately with an error in judgment charge. Thus, the trial court told the jury that medical malpractice is "professional negligence" and that "[n]egligence is the failure to use reasonable care under the circumstances, doing something that a reasonably prudent doctor would not do under the circumstances, or failing to do something that a reasonably prudent doctor would do under the circumstances." It then went on to give the error in judgment charge. The court stated:
"In performing a medical service, the doctor is obligated to use his or her best judgment and to use reasonable care. By undertaking to perform a medical service, a doctor does not guarantee a good result. The fact that there was a bad result to the patient by itself does not make the doctor liable. The doctor is liable only if he was negligent. Whether the doctor was negligent is to be decided on the basis of the facts and conditions existing at the time of the claimed negligence. A doctor is not liable for an error in judgment if he does what he decides is best after careful examination if it is a judgment that a reasonably prudent doctor could have made under the circumstances. If the doctor is negligent, that is, fails to use reasonable care and judgment in providing the service, then the doctor is responsible for the injury or harm caused."
What the error in judgment was or could be in this case was never made clear to the jury. A jury could rationally conclude from the error in judgment charge that the defendant could be absolved from liability if he mistakenly ligated the renal artery while attempting to ligate other vessels. In this way, the issue of negligence was clouded by the error in judgment charge.
I, therefore, agree with the dissent at the Appellate Division that plaintiff is entitled to a new trial.
Order affirmed, without costs.
NOTES
[1] Prior to trial, the Hospital obtained summary judgment dismissing all claims against it.
[2] The pertinent portion of Supreme Court's charge read as follows:

"In performing a medical service, the doctor is obligated to use his or her best judgment and to use reasonable care * * * A doctor is not liable for an error in judgment if he does what he decides is best after careful examination if it is a judgment that a reasonably prudent doctor could have made under the circumstances."
[3] It should be noted that we are not passing on the "locality" issue in this appeal (see, 1A NY PJI3d 703-704 [2001]).
[4] The current articulation of the "best judgment" rule, is as follows:

"A doctor must use his or her best judgment and whatever superior knowledge and skill (he, she) possesses, even if the knowledge and skill exceeds that possessed by the (average doctor, average specialist) in the medical community where the doctor practices" (PJI 2:150).