■ VICKI BOWES, Individually and as Parent and Natural Guardian of CHELSEA BOWES, Formerly Known as CHELSEA CANNON, an Infant, Appellant, v THOMAS NOONE, M.D., et al., Defendants, and INTER-COMMUNITY MEMORIAL HOSPITAL AT NEWFANE, INC., Respondent. (Appeal No. 2.) [748 NYS2d 440] —Appeal from a judgment of Supreme Court, Niagara County (Lane, J.), entered January 26, 2001, which dismissed the complaint against defendant Inter-Community Memorial Hospital at Newfane, Inc. upon a jury verdict in favor of defendants.

It is hereby ordered that the judgment so appealed from be and the same hereby is unanimously affirmed without costs.

Memorandum: Plaintiff commenced this action, individually and on behalf of her daughter, Chelsea, seeking damages resulting from the child abuse inflicted by Chelsea's father, Patrick Cannon (Cannon). Plaintiff alleged that defendant health care professionals should have detected and reported suspected child abuse to the statewide central register of child abuse and maltreatment (central register) as a result of indications of such abuse that were present when Chelsea was examined by her pediatrician, defendant Nazir Gilkar, M.D., on December 19, 1989 and when she was examined at defendant Inter-Community Memorial Hospital at Newfane, Inc. (Hospital) on January 6, 1990. Plaintiff alleged that the reporting of the incidents and the ensuing investigations would have prevented Cannon's severe abuse of Chelsea on January 23, 1990, which resulted in a skull fracture, subdural hematomas, and liver lacerations. Cannon pleaded guilty to attempted assault in the first degree based on that incident of severe abuse and, upon testifying at the jury trial herein, he admitted that he had begun abusing Chelsea when she was just two months old. Although plaintiff had been residing with Cannon and Chelsea at the time of the incidents of abuse, she had not suspected that Cannon was abusing Chelsea.

The jury initially returned a verdict finding that defendant Thomas Noone, M.D., the resident on duty at the Hospital when Chelsea was examined there on January 6, 1990, had

reasonable cause to suspect abuse but that his failure to report the abuse was not willful and thus not actionable. The jury further found that the Hospital was negligent in failing to provide Dr. Noone, its employee, with continuing education to enable him to recognize signs of child abuse, but that its negligence was not a proximate cause of Chelsea's injuries. In addition, the jury found that the Hospital was negligent in failing to provide Chelsea's pediatrician with a copy of the emergency room record of January 6, 1990 and that its failure to do so *was* a proximate cause of Chelsea's injuries. However, in apportioning liability, the jury apportioned 25% to Dr. Noone and 75% to the Hospital. Because that result was inconsistent with the jury's finding that Dr. Noone's negligence was not a proximate cause of Chelsea's injuries, Supreme Court instructed the jury to reconsider its verdict with respect to apportionment. The court denied the request of plaintiff's attorney to instruct the jury that it may reconsider every question on the verdict sheet until a consistent verdict was reached. However, when the jury asked the court during its further deliberations whether its answer to a question that affected apportionment could be changed, the court permitted the jury to do so. The jury thereafter returned a verdict finding none of the defendants liable, and the court denied plaintiff's motion to set aside the verdict.

Plaintiff failed to preserve for our review her contention that the court erred in failing to enter the "non-inconsistent" portions of the jury's verdict before the jury was instructed to reconsider its verdict inasmuch as plaintiff did not seek that relief before the jury delivered its final verdict (*see* CPLR 4110-b). In any event, that contention is without merit. The court properly recognized that the apportionment of liability to Dr. Noone was inconsistent with the jury's finding that his negligence was not a proximate cause of Chelsea's injuries (*see Kim v Cippola,* 231 AD2d 886; *Trotter v Johnson,* 210 AD2d 946, 947). The court therefore properly instructed the jury to reconsider its inconsistent findings and issued additional instructions "to help resolve any confusion" (*Roberts v County of Westchester,* 278 AD2d 216, 217; *see Ryan v Orange County Fair Speedway,* 227 AD2d 609, 611). Upon reconsideration, "the jury was free to substantively 'alter its original statement so as to conform to its real intention', and was not bound by the terms of its original verdict" (*Ryan,* 227 AD2d at 611).

Plaintiff further contends that the jury's findings that Dr. Noone and the nurses employed by the Hospital had "reasonable cause to suspect" abuse was inconsistent with the jury's

findings that Dr. Noone and the nurses had not deviated from accepted medical standards and thus were not negligent. Plaintiff failed, however, to object to the verdict on that ground before the jury was discharged. "Because the issue was not raised until * * * after any steps could have been taken by the trial court to cure the [alleged] inconsistency, it cannot serve as a predicate for a reversal" (*Barry v Manglass*, 55 NY2d 803, 806, *rearg denied* 55 NY2d 1039). In any event, plaintiff's contention lacks merit. To determine whether the act of a medical professional deviates from accepted medical standards, it must first be determined whether the act involves the exercise of professional judgment (*see generally Nestorowich v Ricotta*, 97 NY2d 393, 398). An error in professional judgment by a medical professional is not a basis for liability, provided that the exercise of such judgment is within the range of accepted medical standards (*see id.* at 398-399; *see generally Oelsner v State of New York*, 66 NY2d 636). Here, the medical experts for plaintiff and defendants testified that the issue whether a medical professional should report suspected child abuse to the central register involves the exercise of professional judgment. Thus, the jury was not inconsistent in finding that, although Dr. Noone and the nurses had "reasonable cause to suspect" abuse, they did not deviate from accepted medical standards in failing to report the abuse. A finding of reasonable cause to suspect abuse does not as a matter of law require a finding that the medical professional's exercise of judgment was not within the range of accepted medical standards.

Contrary to the further contention of plaintiff, the court did not err in denying her motion for a directed verdict on the cause of action pursuant to Social Services Law § 420. Pursuant to section 420 (2), "[A]ny person, official or institution required by [Social Services Law, art 6, tit 6] to report a case of suspected child abuse or maltreatment who knowingly and willfully fails to do so shall be civilly liable for the damages proximately caused by such failure." Although Dr. Noone and the nurses employed by the Hospital admitted that they knowingly did not report child abuse to the central register after Chelsea was examined at the Hospital on January 6, 1990, they also testified that they did not believe on that date that child abuse had occurred. Thus, a jury could rationally find that Dr. Noone and the nurses did not willfully fail to comply with their statutory duty to report suspected child abuse (*see generally Levin v Carbone*, 277 AD2d 951).

Also contrary to plaintiff's contention, the court's instruction pursuant to General Obligations Law § 3-111 was proper. We

have reviewed plaintiff's remaining contentions and conclude that they are without merit. Present—Green, J.P., Wisner, Scudder, Burns and Gorski, JJ.