Arthur W. Tifford, Tifford & Tifford, P.A., Miami, FL (Lawrence A. Garvey, The Law Offices of Cushner & Garvey LLP, Tarrytown, N.Y., of counsel) for Defendants–Appellants.

Present: Hon. PIERRE N. LEVAL, Hon. ROBERT A. KATZMANN and Hon. DEBRA ANN LIVINGSTON, Circuit Judges.

### SUMMARY ORDER

The United States Securities and Exchange Commission ("SEC") sued, *inter alia*, defendants Richard A. Altomare and Chris G. Gunderson, alleging violations of various federal securities laws. The SEC then moved, in relevant part, for summary judgment against Altomare and Gunderson with respect to its claims that they violated sections 5 and 17(a) of the Securities Act of 1933, section 10(b) of the Securities Exchange Act of 1934, and Rule 10b–5 promulgated thereunder. Altomare and Gunderson cross-moved for summary judgment with respect to the section 5 claims. The district court denied Altomare's and Gunderson's motion and granted the SEC's motion. Altomare and Gunderson appeal both aspects of that decision.

We review the district court's grant of summary judgment *de novo*, "examining the evidence in the light most favorable to, and drawing all inferences in favor of, the non-movant." *Sheppard v. Beerman*, 317 F.3d 351, 354 (2d Cir.2003). Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Altomare and Gunderson argue two points on appeal. They contend first that they did not violate section 5 of the Securities Act because the shares they issued to various consultants were exempt from registration pursuant to sections 1125(e) and 1145 of the Bankruptcy Code. They assert next that there were genuine issues of fact as to their state of mind so as to make summary judgment with respect to the fraud claims inappropriate. Having carefully considered the record, we find these arguments to be without merit. Substantially for the reasons stated in the district court's thorough and thoughtful opinion and order, *SEC v. Universal Express, Inc.*, 475 F.Supp.2d 412 (S.D.N.Y.2007), the judgment of the district court is **AFFIRMED**.

Catherine A. PAGE, as Parent and Natural Guardian on Behalf of Brittany Page, Infant and Melissa Page, Infant, Plaintiff–Appellant,

v.

Patricia MONROE, Adirondack Internal Medicine and Pediatrics, P.S., Randy Quayle, Ph.D., St. Agnes School, Diocese of Ogdensburg, Robert Schiller and Lake Placed Central School District, Defendants–Appellees,

Nancy Lewis, Crisis Center of Clinton, Essex and Franklin Counties and Franklin Counties, Inc., Defendants–Third–Party–Defendants–Appellees,

Julie Ferguson, County of Essex, New York, Essex County Mental Health and Essex County Department of Social Services, Defendants–Cross–Defendants–Appellees.

No. 07–2206–cv.

United States Court of Appeals, Second Circuit.

Nov. 13, 2008.

Stephen R. Coffey, O'Connell & Aronowitz, Albany, NY, for Plaintiff-Appellant.

Debra J. Young, Thuillez, Ford, Gold, Butler & Young LLP, Albany, NY, for Defendants–Appellees.

Present: Hon. RICHARD C. WESLEY, Hon. PETER W. HALL, Circuit Judges, Hon. LOUIS F. OBERDORFER,* District Judge.

* The Honorable Louis F. Oberdorfer, United States District Court for the District of Columbia, sitting by designation.

## SUMMARY ORDER

Appellant Catherine Page, on behalf of her two infant daughters, Brittany and Melissa Page, appeals from the May 16, 2007 order of the United States District Court for the Northern District of New York (Lawrence E. Kahn, J.) granting summary judgment in favor of appellees Patricia Monroe and Adirondack Internal Medicine and Pediatrics, P.C. ("AIMP"), and dismissing Page's complaint in its entirety. The district court determined that (1) Page failed to provide any evidence to support her claim that Dr. Monroe breached a duty to report under New York's mandatory reporter system, or that such an alleged breach was knowing and willful; and (2) Page's medical malpractice claim failed as well because she did not establish that Dr. Monroe had breached her professional duty of care, or that such an alleged breach was the proximate cause of the Pages' harm. In addition, the court dismissed the vicarious liability claims against AIMP because it found no liability on the part of AIMP's employee, Dr. Monroe. *Page v. Monroe,* 488 F.Supp.2d 219 (N.D.N.Y.2007). We assume the parties' familiarity with the underlying facts and procedural history of the case.

We review an award of summary judgment *de novo,* and will affirm only if the record, viewed in the light most favorable to the nonmoving party, reveals no genuine issue of material fact. *See* Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Jute v. Hamilton Sundstrand Corp.,* 420 F.3d 166, 172 (2d Cir.2005).

■ First, Page argues that the district court erred in dismissing her claim that Dr. Monroe and AIMP breached a statutory duty to report under section 413 of the New York Social Services Law. Because appellants have failed to show that, under the circumstances, a duty arose on the part of Dr. Monroe to report Catherine Page, this argument must fail. Section 413 requires medical professionals, among others, to make a report to the State Central Register ("SCR") when they have reasonable cause to suspect child abuse or maltreatment. N.Y. Soc. Serv. Law § 413 (McKinney 2007). As used in this section, an "abused child" is a minor child (less than 18 years of age) whose "parent or other person legally responsible for his care" commits or allows to be committed physical or sexual abuse upon the child. Family Ct. Act § 1012(e)(iii); *see* N.Y. Soc. Serv. Law § 412(1)(a). The statute further defines the "subject" of such a report as "any parent of, guardian of, custodian of or other person eighteen years of age or older legally responsible for [the abused child] who is allegedly responsible for [the abuse, or allowing the abuse to be inflicted]." N.Y. Soc. Serv. Law § 412(4) (McKinney 2007). A person required to report suspected child abuse or maltreatment under the statute may be subject to civil liability if she knowingly and wilfully fails to do so. N.Y. Soc. Serv. Law § 420(2) (McKinney 2007).

As a 14–year–old minor not legally responsible for his sisters' care, Anthony could not be the subject of a report under the mandatory reporter law. *See* N.Y. Soc. Serv. Law § 412(4) (McKinney 2007) (limiting reportable subjects to adults legally responsible for the care of the allegedly abused child); *see also Catherine G. v. County of Essex,* 3 N.Y.3d 175, 180, 785 N.Y.S.2d 369, 818 N.E.2d 1110 (2004) (finding no reportable incident because Anthony was a 14–year–old boy and not legally responsible for his siblings). Thus, when Catherine Page informed Dr. Monroe in August of 2000 of her daughter's diary entry indicating possible abuse by Anthony, this would only have been a re-

portable incident had Dr. Monroe thought that Catherine Page, or any other adult legally responsible for the children's care, was incapable or unwilling to protect the children from the potential abuse. *Id.* The evidence shows that, at the time of the initial reports of abuse, Dr. Monroe had no reason to believe that Catherine Page was neglecting her duty to protect her daughters from abuse. Catherine Page called Dr. Monroe the night she read her daughter's diary entry indicating that abuse was taking place. She told Dr. Monroe that she had taken steps to obtain professional help for her children in the form of counseling, that the children were currently separated—Anthony at his father's house, and her two daughters at their aunt's house—and that she would not leave the children together unattended going forward. Her decisions to cancel subsequent appointments with Dr. Monroe were explained by Brittany's preference not to speak with Dr. Monroe about the incident, and the fact that Brittany was seeing a mental health professional skilled in treating sexually abused children. Thus, with the information she had at the time, Dr. Monroe did not have a duty to report under New York's mandatory reporter laws.[1] N.Y. Soc. Serv. Law § 413 (McKinney 2007). Although the record evidence before the district court was far more extensive than that before the court in *Catherine G.*, both lead to the same conclusion. *See Catherine G.*, 3 N.Y.3d at 180, 785 N.Y.S.2d 369, 818 N.E.2d 1110 ("[Catherine Page] never suggested that she was so bereft of control that she was unable to stop her 14-year-old boy from harming his siblings. The record reveals a mother who . . . appeared to be taking reasonable

measures to protect her daughters and obviate the need for governmental intervention.").

■ Page's second claim sounds in medical malpractice. She claims that Dr. Monroe breached her duty to exercise due care by failing to report or make an independent investigation of the steps Catherine Page was or was not taking to combat the alleged abuse. The expert testimony of Dr. Tomiak indicating that Dr. Monroe deviated from the standard of care raises a question of fact as to whether Dr. Monroe breached her duty of care as a physician. As a doctor, Monroe was charged with the duty to exercise due care, as measured against the conduct of her peers, and act as a reasonably prudent doctor would under the circumstances. *Nestorowich v. Ricotta*, 97 N.Y.2d 393, 398, 740 N.Y.S.2d 668, 767 N.E.2d 125 (2002). In an affidavit, Dr. Monroe's expert witness, pediatrician Henry P. Tomiak, opined that Dr. Monroe had not violated the standard of care when she failed to take additional action either after Page assured her that Anthony and his sisters would be kept apart until Dr. Monroe had an opportunity to speak with Brittany or after Page failed to bring Brittany for scheduled follow-up appointments. Dr. Tomiak, however, several times during his deposition, expressly stated that failure to inquire as to whether Anthony was being kept away from Brittany and Melissa, failure to ascertain whether the children were being supervised at all times, and failure to follow up with the Pages after Brittany's initial allegations of sexual molestation would be deviations from the standard of care. Further, Page's expert witness, pediatrician Jenni-

---

1. We note that even had appellants' shown a duty to report, they have failed to allege any facts to demonstrate that Dr. Monroe's failure to report was knowing and willful. *Bowes v. Noone*, 298 A.D.2d 859, 861, 748 N.Y.S.2d 440 (4th Dep't 2002). While Dr. Monroe knew she was not reporting, the evidence suggests that she did not believe the Pages were abused children under the specific terms of the reporting statute.

fer Canter, opined that Dr. Monroe had violated the standard of care by failing to follow up on Brittany's missed appointment after learning of the abuse, failing to ascertain that Page was incapable of preventing further abuse, and by failing to make an independent call to law enforcement authorities to report the abuse. We find that this expert testimony is enough to raise a triable question of fact as to whether Dr. Monroe breached her duty of care as a physician. *See Rodriguez v. City of New York,* 72 F.3d 1051, 1063 (2d Cir. 1995).

Whether Dr. Monroe's alleged breach of a duty of care was the proximate cause of the Pages' injuries is generally a question of fact for the jury. *See, e.g., Decker v. Forenta LP,* 290 A.D.2d 925, 926, 736 N.Y.S.2d 554 (3rd Dep't 2002) ("It is axiomatic that proximate cause ordinarily is a question to be determined by the finder of fact."). Proximate cause may be determined as a matter of law, but that is so "when only one conclusion can be drawn." *Bell v. Bd. of Educ.,* 90 N.Y.2d 944, 946, 665 N.Y.S.2d 42, 687 N.E.2d 1325 (1997). In this case, however, Page offered evidence that created at least an inference that had Dr. Monroe herself contacted the Child Protective Services or law enforcement authorities, those authorities would have intervened to stop Anthony's abuse of his half-sisters at some point before February 2001. Accordingly, Page has demonstrated a genuine issue of material fact

with respect to whether Dr. Monroe's alleged deviations from the standard of care were the proximate cause of the girls' injuries such that, in this case, the question is one appropriately determined by the jury.[2]

Finally, in light of the fact that we find a material issue of fact as Dr. Monroe's liability in medical malpractice, we remand the appellant's vicarious liability claim against AIMP as well.

Accordingly, for the reasons set forth above, the judgment of the district court is hereby AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this summary order.

---

2. It is unclear whether as a matter of law the common law duty to exercise due care encompasses an independent obligation to report to law enforcement separate and apart from the statutory duty to report to the state registry. *See Heidt v. Rome Memorial Hosp.,* 278 A.D.2d 786, 787, 724 N.Y.S.2d 139 (4th Dep't 2000), *leave to appeal denied,* 725 N.Y.S.2d 263 (4th Dep't 2001) (Lawton, J., dissenting) ("The conclusion is inescapable that [the Mandated Reporter Law] was intended to define the duty of a care giver to

report cases of suspected child abuse and that no common-law duty, if any ever existed before the enactment of [the Mandated Reporter Law], survived."). The question arises whether the medical profession has taken it upon itself to enter farther into the realm of law enforcement than the New York legislature has required it to do since 1973 when N.Y. Soc. Serv. Law § 413 was enacted into law. On that we express no opinion and leave its resolution to the district court in the first instance.