(June 10, 2010)

■ MARIA TERESA BACANI, Individually and as Administrator of the Estate of JONATHAN BACANI, Deceased, et al., Respondents, v LISA ROSENBERG, M.D., et al., Defendants, and DEEPAK NANDA, M.D., Appellant. [903 NYS2d 30]—

Order, Supreme Court, New York County (Joan B. Carey, J.), entered on or about June 1, 2009, which, to the extent appealed from, denied the cross motion by defendant Nanda for summary judgment dismissing the medical malpractice complaint as against him, unanimously reversed, on the law, without costs, the cross motion granted, the complaint dismissed as against Dr. Nanda, and the action severed and continued as to the remaining defendants.

Plaintiff mother delivered a stillborn fetus 10 days after fetal demise was diagnosed on September 17, 2004. At that time the fetus was in the 35th week of gestation. The autopsy report contains the following notation: "There were multifocal chronic and acute infarcts in the placenta (in addition to the expected post-IUFD changes), the presence of which suggests that uteroplacental insufficiency may have played a role in this fetal demise. However, the extended in utero retention time prevents a more conclusive statement as to the cause of death."

On or about February 26, 2004, plaintiff mother began her prenatal treatment with defendant Rosenberg, her obstetrician/gynecologist. Dr. Rosenberg referred the patient to Dr. Nanda, a perinatologist, who examined her on August 31, 2004. No anomalies were disclosed by a fetal anatomy sonogram performed by Dr. Nanda that day, although he did note a large fibroid in the lower uterine segment. Dr. Nanda advised Dr. Rosenberg in writing that a large fibroid may be associated with a slow, difficult or dysfunctional labor or postpartum hemorrhage. He instructed plaintiff mother to return for a follow-up examination in two weeks. In the interim, on September 6, 2004, six days after Dr. Nanda's examination, plaintiff mother returned to Dr. Rosenberg for an office visit. At the time of this visit, Dr. Rosenberg observed that the baby was growing well and the amniotic fluid volume was normal. According to plaintiff mother's deposition, she experienced no cramping, bleeding, pelvic pain or discharge at the time of her August office visit with Dr. Rosenberg or a follow-up visit with Dr. Nanda on September 17, 2004. Dr. Nanda performed another sonogram during this follow-up visit, and detecting no heartbeat, he suspected fetal demise. On his advice, plaintiffs immediately went to a hospital where the death of the fetus was confirmed.

In plaintiffs' supplemental bill of particulars, it is alleged that Dr. Nanda deviated from a standard of medical care that required him to (1) inform plaintiffs that the fibroid was growing and large enough to injure the fetus, (2) provide sufficient antepartum fetal monitoring necessitated by plaintiff mother's advanced maternal age of 39, (3) provide the same monitoring necessitated by the fibroid, (4) supervise and monitor the treatment of plaintiff mother and her fetus, and (5) deliver plaintiff's child before fetal death occurred.

To make out a prima facie case of medical malpractice, a plaintiff must show that a defendant deviated from accepted medical practice and that the alleged deviation proximately caused injury or death (*see Koeppel v Park*, 228 AD2d 288, 289 [1996]). A medical malpractice defendant moving for summary judgment meets his initial burden by establishing that he did not deviate from accepted medical practice or proximately cause injury (*Mattis v Keen, Zhao*, 54 AD3d 610, 611 [2008]). Dr. Nanda submitted the expert affidavit of Dr. Sandra McCalla, a physician board certified in obstetrics and gynecology. Dr. McCalla opined that uterine fibroids, in and of themselves, do not cause fetal demise. She also opined that in light of plaintiff mother's history, clinical evaluation, prior sonogram results and August 31, 2004 sonogram, Dr. Nanda's request for a follow-up

evaluation in two weeks after his August 31 examination was appropriate. Dr. McCalla further opined that based on the absence of prior known medical complications, nothing in plaintiff mother's prenatal history or the August 31 sonogram warranted any fetal testing or monitoring beyond what was done. As a basis for her opinions, Dr. McCalla cited the absence of reported vaginal bleeding, abdominal pain or discharge as noted above. She also made note of the fact that the sonogram revealed a normal pregnancy with fibroids, a vertex presentation with normal fetal heart rhythm, a normal heart chamber and a normal amniotic fluid volume. Based upon the foregoing, Dr. McCalla's affidavit established that Dr. Nanda did not deviate from accepted medical practice. Accordingly, the burden shifted to plaintiff to produce evidence in admissible form sufficient to establish the existence of a triable issue of fact (*see Sisko v New York Hosp.*, 231 AD2d 420, 422 [1996], *lv dismissed* 89 NY2d 982 [1997]). Once a medical malpractice defendant has established the absence of any departure from good and accepted medical practice causing injury, a plaintiff in opposition "must submit a physician's affidavit of merit attesting to a departure from accepted practice and containing the attesting doctor's opinion that the defendant's omissions or departures were a competent producing cause of the injury" (*Domaradzki v Glen Cove Ob/Gyn Assoc.*, 242 AD2d 282 [1997]). Plaintiffs' expert, Dr. John T. Harrigan, who is also board certified in obstetrics and gynecology, opined that Dr. Nanda deviated from the applicable standard of obstetrical and gynecological practice by failing to assess the risk of fetal death and failing to perform and recommend weekly fetal surveillance and/or testing of the fetus commencing on August 31, 2004, the date of his initial consultation. Supreme Court denied Dr. Nanda's cross motion, finding issues of fact and credibility as to whether Dr. Nanda had deviated from the applicable standard of medical care as opined by Dr. Harrigan. We disagree.

Dr. Harrigan stated in his affidavit that a review of unspecified "records indicates that [the fetus] died from uteroplacental insufficiency caused by both advanced maternal age and a uterine myoma." This claim of causation is at odds with the autopsy report, which stated that uteroplacental insufficiency "may have" played a role in the fetal demise. Moreover, the autopsy report did not attribute uteroplacental insufficiency to the factors recited in Dr. Harrigan's affidavit. Hence, Dr. Harrigan's opinion does not raise a triable issue of fact with respect to causation because it is not based on facts contained in the record or within his personal knowledge (*see Quinn v Artcraft Constr.*, 203 AD2d 444, 445 [1994]). Also, according to Dr. Har-

rigan, good medical practice would have required Dr. Nanda to schedule plaintiff mother for fetal surveillance and testing on September 7 and 14, 2004. Here, his opinion was conclusory because he did not state what the surveillance and testing might have disclosed on those dates. In addition, Dr. Harrigan's affidavit failed to address the absence of signs of fetal distress, as indicated in plaintiff mother's deposition and Dr. Rosenberg's September 6, 2004 office examination. An expert's affidavit containing bare conclusory assertions is insufficient to defeat summary judgment (*Wright v New York City Hous. Auth.*, 208 AD2d 327, 331 [1995]). Accordingly, plaintiffs have not raised a triable issue of fact as to whether Dr. Nanda departed from accepted medical practice, and even if so, whether such departure was a competent producing cause of the fetus's death. Concur— Gonzalez, P.J., Moskowitz, DeGrasse, Manzanet-Daniels and Román, JJ. **[Prior Case History: 2009 NY Slip Op 31190(U).]**