Order, Supreme Court, Bronx County (Douglas E. McKeon, J.), entered February 21, 2012, which, to the extent appealed from as limited by the briefs, denied the motions of defendants New York City Health and Hospitals Corporation (Jacobi Hospital) and Montefiore Medical Center (Montefiore) for summary judgment dismissing the complaint, unanimously reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment accordingly.
On May 17, 2001, the infant plaintiff, then five years old, suffered a generalized tonic-clonic seizure and was admitted to Lincoln Medical and Mental Health Center. On admission, she was no longer actively seizing, but had a low grade fever and complained of a headache. All diagnostic tests, including electroencephalography (EEG), lumbar puncture, MRI and CT scan, were normal or negative. The attending pediatric neurologist ruled out bacterial meningitis, brain infection, and mycoplasma pneumonia; her assessment was “seizure associated with febrile illness most likely a complex febrile seizure.” Plaintiff was administered Ativan to control seizure activity, and intravenous antibiotics, and returned to her baseline mental status. She was discharged on May 21, 2001, with a prescription for Diastat, which is used to treat immediate seizures but does *410 not prevent future seizures or a seizure disorder from progressing.[1]
On June 4, 2001, plaintiff experienced a generalized seizure and was taken by ambulance to the emergency room at defendant Bronx Lebanon Hospital, where she continued to seize. Ativan was administered, and plaintiff returned to her baseline mental status. Bronx Lebanon did not repeat the EEG, lumbar puncture, or CT scan performed by Lincoln. Plaintiff was discharged on June 5 with a working diagnosis of complex febrile seizure.[2]
On June 7, 2001, plaintiff experienced another seizure and was taken to defendant Jacobi Hospital (Jacobi), where she continued to have intermittent focal and generalized motor seizures. She was afebrile, but complained of headaches.
On admission, Ativan was prescribed to control the seizures and Acyclovir for possible herpes simplex virus. Plaintiff was seizure-free overnight, with no reports of significant abnormal behavior. However, between June 9 and 10, she experienced multiple seizures and had episodes of abnormal behavior. Plaintiff was treated with Tegretol, Phospenytoin and Ativan, and the seizures were suppressed. Differential diagnoses of status epilepticus and viral encephalitis were considered.[3] On June 12, plaintiff experienced multiple seizures and abnormal behavior, and was transferred to defendant Montefiore.
On June 13, the infant plaintiff was moved to Montefiore’s epilepsy unit for video EEG monitoring for evaluation of seizures and possible status epilepticus. After review of the EEG monitoring, the attending pediatric neurologist’s assessment was: “Abnormal behavioral manifestations. Rule out frequent seizures status . . . encephalitis . . . collagen vascular disease . . . parainfectious disorder. . . . Continue Dilantin, Tegretol ... to maximize seizure management.”
By June 18 the working diagnosis had changed to probable viral or parainfectious encephalopathy. On June 19, plaintiff was transferred to pediatrics. She remained on Tegretol and the anti-epileptic drug Dilantin to control her seizures, and was given a 10-day course of the antibiotic Cipro.
*411 Plaintiff was discharged on July 3, 2001, on Tegretol. In the early morning hours of July 5, 2001, she suffered another seizure and was returned to Montefiore, where she remained overnight.
Plaintiffs allege that Jacobi and Montefiore departed from accepted medical practices by failing to properly diagnose, treat and suppress the seizure disorder between June 2001 and mid-July 2001, which caused it to progress to status epilepticus and complex partial status, leaving the infant plaintiff (plaintiff) neurologically impaired. Among other things, plaintiffs allege that with status epilepticus documented as early as June 10, it was a departure for Jacobi to wait two days to transfer plaintiff to Montefiore for continuous video EEG monitoring, which was unavailable at Jacobi, and that Montefiore failed to timely and appropriately administer antiseizure medications and antibiotics.
Jacobi and Montefiore made prima facie showings that they did not deviate from accepted medical practices in treating the plaintiffs seizure disorder by submitting plaintiffs medical records, deposition transcripts of physicians who treated plaintiff, and affidavits by their medical experts (see Bacani v Rosenberg, 74 AD3d 500 [1st Dept 2010], lv denied 15 NY3d 708 [2010]; Gargiulo v Geiss, 40 AD3d 811 [2d Dept 2007]).
Jacobi performed numerous diagnostic tests, including several MRIs & EEGs, multiple spinal taps, a CT scan, blood counts, blood and urine cultures, and cerebrospinal fluid (CSF) cultures. It administered three antiseizure medications to plaintiff, Phosphenytoin, Tegretol, and Ativan, and monitored their levels to ensure proper dosing. Jacobi’s expert opined that these tests were appropriate and that the dosage of the anti-seizure medications was adjusted appropriately to ensure that the levels of medication were within therapeutic guidelines and at sufficient levels to address plaintiffs seizure activity. He also opined that no evidence supported a diagnosis of nonconvulsive seizures at Jacobi, and that the failure to use video EEG monitoring was not a deviation in 2001.
Montefiore prescribed Tegretol for the seizures, Dilantin and Fosphenytoin for episodes of abnormal behavior, and Haldol for delirium. With respect to plaintiffs’ allegations that Montefiore failed to adequately control plaintiff’s seizures, Montefiore’s expert opined that these medications were appropriate and that hospital staff appropriately managed plaintiffs seizure activity. He further opined that the appropriate workup was performed to determine the cause of the seizures, including blood tests, CSF tests, EEG monitoring, a lumbar puncture, and a brain *412 MRI, and that there were no grounds for a claim of lack of informed consent, since a reasonable person would have consented to the treatment.
Plaintiffs’ expert’s conclusory affirmation in opposition failed to raise factual issues whether defendants departed from accepted medical practices and, if so, whether their departures proximately contributed to the failure to timely diagnose and treat plaintiff’s seizure disorder and subsequent neurological injuries (see Alvarez v Prospect Hosp., 68 NY2d 320 [1986]; Oestreich v Present, 50 AD3d 522 [1st Dept 2008]; Brown v Bauman, 42 AD3d 390 [1st Dept 2007]). The expert’s conclusion that plaintiffs medication levels at Jacobi and Montefiore were not properly adjusted was based on supposition and hindsight. Among other things, the expert failed to explain why the levels of medication prescribed were inappropriate given the clinical presentation at the time (see Matter of Joseph v City of New York, 74 AD3d 440 [1st Dept 2010]).
Plaintiffs’ expert opines that Jacobi failed to initiate an appropriate antiseizure medication regimen based upon the “true diagnosis of nonconvulsive status epilepticus.” However, although plaintiff received a differential diagnosis of status epilepticus on June 10, 2001, it is not until June 12, 2001, that her chart notes “complex partial status” and she was transferred to Montefiore that day. Plaintiffs’ expert offered only conclusory assertions that plaintiff was having nonconvulsive seizures that would have been discovered earlier and would not have progressed to status epilepticus had Jacobi provided continuous EEG monitoring or transferred plaintiff to Montefiore sooner. The expert does not identify the actions Jacobi should have taken upon discovering the existence of nonconvulsive seizures when it was already monitoring plaintiffs medication levels and investigating the differential diagnosis of viral encephalitis (see Rodriguez v Montefiore Med. Ctr., 28 AD3d 357 [1st Dept 2006]).
Concur — Sweeny, J.P., Renwick, Andrias, Freedman and Feinman, JJ.

. The action against New York City Health and Hospitals Corporation with respect to Lincoln Medical and Mental Health Center has been discontinued with prejudice.

. Because the claims related to the diagnosis and treatment of encephalitis, mycoplasma pneumonia and mycoplasma encephalitis were dismissed on reargument, Bronx Lebanon is not pursuing its appeal.

. Status epilepticus is a seizure that lasts more than 30 minutes, or multiple seizures over a 30-minute period of time in which the patient does not return to the baseline mental status between seizures.