Saxe, J.,
dissents in a memorandum as follows: The majority reverses the motion court and grants summary judgment to defendants in this medical malpractice case. I disagree, perceiving questions of fact regarding whether defendant hand surgeon *410 deviated from accepted medical practice based on (1) her selection of pyrocarbon joint implants rather than silicone, and (2) her failure to disclose or discuss with plaintiff information provided to the doctor by a representative of the implant’s manufacturer, who indicated that a person with plaintiffs type of condition might not be a good candidate for pyrocarbon implants based on the degree of tissue damage likely to be present.
Plaintiff Mirta Ramos has a long history of rheumatoid arthritis, an autoimmune disease that leads to inflammation and destruction of the joints and surrounding tissues. By the time she consulted with defendant, Dr. Renata Vanja Weber, on March 4, 2009, the disease was advanced, and her metacarpophalangeal (MCP) joints, commonly known as her knuckles, were significantly deformed, and caused her severe pain. Plaintiff sought out and consulted with Dr. Weber to find out whether the joints could be replaced with implants in order to straighten the hand and alleviate the pain. Dr. Weber agreed to perform joint implantation surgery, which she performed on plaintiff’s right hand on July 30, 2009, removing the inflamed joints and replacing them with pyrocarbon implants. However, the surgery was not successful. It failed to ease the pain; indeed, plaintiff says she experienced greater pain after the surgery. Moreover, the implants did not perform properly; they began to stick out and her fingers to curl in.
During follow-up visits in August 2009, Dr. Weber reviewed X rays of the hand, and noticed a developing problem with subluxation, or misalignment of the fingers. On August 24, 2009, four fingers required repositioning during a nerve block procedure. In September, Dr. Weber began planning a second surgery, which was ultimately performed on November 5, 2009, at which time Dr. Weber realigned the fingers and centralized the tendons. However, the misalignment problem did not resolve.
Plaintiff asserts that Dr. Weber’s use of pyrocarbon implants was a departure from the accepted standard of care. Further, plaintiff asserts that Dr. Weber failed to inform her about information regarding the likelihood that pyrocarbon implants would not help her. Plaintiff relies on an email exchange between Dr. Weber and Chris McLoughlin, a representative of Ascension Orthopedics, the manufacturer of the implants, one month before the surgery. Specifically, in a June 25, 2009 email Dr. Weber sent to McLoughlin, she mentioned a patient—later acknowledged to be plaintiff—who was scheduled to receive MCP joint replacements and had “awful ulnar drift,” i.e., *411 deformed fingers that bend sideways toward the pinky. McLouglin replied to the email on June 29, 2009, stating that the patient with awful ulnar drift “may not be the ideal candidate for Pyrocarbon implants and would probably do better with silicone, [because] [h]er RA has probably progressed too far for pyrocarbon implants[,] [which] need[ ] good soft tissue support for optimal results. It’s likely that she would present herself back in your office 12-18 months later with dislocated joints, only ultimately needing silicone joints anyway.” Dr. Weber did not share with plaintiff the contents, or the gist, of that email.
In considering defendants’ motion for summary judgment, I agree with the majority that defendants established their entitlement to judgment as a matter of law with the testimony of Dr. Weber and the affidavit of defendants’ expert, which demonstrate that Dr. Weber exercised her best judgment in choosing plaintiff as an appropriate candidate for pyrocarbon joint implants, and that she obtained plaintiff’s informed consent before undertaking the surgeries. However, unlike the majority, I believe that plaintiffs submissions were sufficient to raise triable issues of fact as to whether Dr. Weber deviated from accepted medical practices, or properly obtained plaintiff’s informed consent, precluding summary judgment.
In opposition to a defendant’s showing that there was no deviation from accepted medical practice, the burden shifts to the plaintiff to “submit a physician’s affidavit of merit attesting to a departure from accepted practice and containing the attesting doctor’s opinion that the defendant’s omissions or departures were a competent producing cause of the injury” (Bacani v Rosenberg, 74 AD3d 500, 502 [1st Dept 2010], lv denied 15 NY3d 708 [2010]). These assertions must be supported by competent evidence tending to establish the elements of the malpractice claim (see Diaz v New York Downtown Hosp., 99 NY2d 542, 544 [2002]; DeFilippo v New York Downtown Hosp., 10 AD3d 521, 523-524 [1st Dept 2004]).
Plaintiff’s expert expressed the opinion that Dr. Weber departed from the accepted standard of care in deciding to use pyrocarbon joint implants rather than opting for silicone implants, because plaintiff had inadequate bone support for the pyrocarbon implant. While the evidentiary material in the record tending to support this assertion focuses on an absence of tissue support rather than bone support, in the context of a summary judgment motion, this inconsistency should not be used to invalidate the expert’s assertion. Plaintiff’s expert’s opinion that the use of silicone implants would have improved plaintiff’s ultimate outcome is sufficiently supported by the *412 email of the manufacturer’s representative expressing a similar view.
Nor may the claim of lack of informed consent be disposed of as a matter of law. In order to make out a lack of informed consent, plaintiff must demonstrate that (1) Dr. Weber failed to fully apprise her of the reasonably foreseeable risks of pyrocarbon implant joint replacement surgery, and the alternatives to it, (2) a reasonable person would have opted against having pyrocarbon implant joint replacement surgery, and (3) the surgery was a proximate cause of plaintiff’s injury (Public Health Law § 2805-d [2]; see Eppel v Fredericks, 203 AD2d 152 [1st Dept 1994]).
As to the first element, plaintiff’s signature on a consent form, combined with Dr. Weber’s testimony, constituted a prima facie showing by defendants that plaintiff was properly informed of the risks and benefits of, and alternatives to, the surgery. However, plaintiffs own assertions that she was not adequately informed of the risks of the surgery, or of the potential problems that could arise from the use of pyrocarbon rather than silicone implants, or even of the availability of silicone joint implants as an alternative, sufficiently rebuts those claims. Like the “learned intermediary” discussed in Martin v Hacker (83 NY2d 1 [1993]), namely, the prescribing physician who is informed about the dangers of a drug by its manufacturer, and is expected to convey the necessary information to the patient, defendant physician here was in a comparable position. Even though the email was not a formal manufacturer’s warning of the type that a physician has an obligation to pass along to the patient, it contained important, highly relevant information regarding how a patient with the type of symptoms suffered by plaintiff would likely respond to the implants the physician had decided to use. In these unique circumstances, this information from the manufacturer’s representative should have been passed along to plaintiff.
Defendant argues, relying on Dodes v North Shore Univ. Hosp. (149 AD2d 455 [2d Dept 1989]), that plaintiff failed to allege, either in her complaint or her bill of particulars, that a reasonably prudent person with complete information would not have agreed to the pyrocarbon implants. However, the Dodes case looks to the complaint, the bill of particulars or the motion papers {id. at 456). The moving papers here contain plaintiffs deposition testimony in which she states that she would not have opted for the surgery if she had been fully informed. Notably, this Court indicated in Eppel v Fredericks that the plaintiff satisfied the “reasonable person” element of a lack of informed *413 consent where an expert stated that a different procedure would have been “much more medically sound,” and the plaintiff testified that the other, better alternative was not discussed with her (203 AD2d at 154). Those same factors were established here.
Defendants also contend that plaintiff failed to show that the claimed lack of disclosure was a proximate cause of her injuries (see Evart v Park Ave. Chiropractic, P.C., 86 AD3d 442 [1st Dept 2011], lv denied 17 NY3d 922 [2011]). They observe that while plaintiff testified that if she had understood the true risks, she would not have undergone the surgery at all, she did not testify that she would have made any different decision if the information provided by the manufacturer’s representative had been disclosed. However, this reasoning imposes too strict a requirement for avoiding summary judgment; plaintiff’s affirmative statement that if she had understood the true risks, she would not have undergone the surgery at all, is sufficient to create an issue of fact as to proximate causation.
Plaintiff’s evidence sufficiently created issues of fact as to whether defendant deviated from accepted medical practice based on (1) her selection of pyrocarbon joint implants rather than silicone, and (2) her failure to disclose or discuss with plaintiff information provided to the doctor by a representative of the implant’s manufacturer. I would therefore affirm the motion court’s denial of summary judgment.